Decided January 18, 1909.

## STATE *v.* STEPHANUS.

[99 Pac. 428.]

RIOT—DEFINITION—UNLAWFUL ASSEMBLY—DEFINITION.

1. If parties assemble in a tumultuous manner, and actually execute their purpose with violence, it is a "riot" at common law. "Unlawful assembly" is a distinct offense at common law, and if persons assemble for a purpose which, if executed, would constitute a riot, but separate without carrying out their purpose, their acts constitute an unlawful assembly.

CRIMINAL LAW—ACTS CONSTITUTING CRIME—STATUTORY PROVISIONS— CREATION AND DEFINITION.

2. While the common law may be looked to for the definition of a statutory offense not defined by the statute, whether an act constitutes a crime must be determined by the Code alone.

CRIMINAL LAW—CREATION OF OFFENSE—FAILURE TO PROVIDE PUNISHMENT—EFFECT—"RIOT"—"UNLAWFUL ASSEMBLY."

3. Section 1913, B. & C. Comp., makes any use of, or threat to use, force and violence, by three or more persons acting together, if accompanied by immediate power of execution, a "riot," and makes such assembly an "unlawful assembly," where there is no actual commission of the unlawful act, or where the assembly is adapted to disturb the peace, etc., and Section 1914 provides a punishment for a riot, but imposes no punishment for unlawful assembly. *Held,* that the mere definition of an unlawful assembly, without providing a punishment therefor, did not make it a crime.

CRIMINAL LAW—VERDICT—CONSTRUCTION—ACQUITTAL—"RIOT"—"UNLAWFUL ASSEMBLY."

4. Section 1913, B. & C. Comp., makes any use of, or threat to use, force and violence, by three or more persons getting together, if accompanied by immediate power of execution, a "riot," and makes such assembly an "unlawful assembly," where there is no actual commission of the unlawful act, and Section 1914 provides a punishment for riot, but fails to make an unlawful assembly a crime by providing a punishment. Defendants were indicted for riot, and the jury found them guilty of unlawful assembly, and made special findings that some of defendants carried dangerous weapons. *Held* that, since the findings did not embrace the element of force and violence necessary to constitute a riot, they operated as an acquittal of that offense, and that the jury attempted to find defendants guilty of unlawful assembly, which was not a crime, was immaterial.

CRIMINAL LAW—VERDICT—SPECIAL VERDICT—CONSTRUCTION.

5. Nothing can be added to a special verdict by inference, and it amounts to an acquittal if it omits any fact essential to constitute the crime.

CRIMINAL LAW—VERDICT—SPECIAL VERDICT—SUFFICIENCY.

6. Under Section 1412, B. & C. Comp., permitting the jury to find a special verdict when they are in doubt as to the legal effect of the facts proved, unless the facts found are sufficient to establish guilt, the special verdict will amount to an acquittal.

From Union: JOHN W. KNOWLES, Judge.

Statement by MR. COMMISSIONER KING.

The defendants were tried under an indictment charging them with riot, but convicted of an "unlawful assem-

bly," the indictment, omitting formal parts, being as follows:

"The said George Kolias, Nick Stephanus, Nick Baggles, and Harry Barlas on the 9th day of October, 1908, in the county of Union and State of Oregon, did then and there, and acting together, unlawfully, feloniously, and riotously assemble and gather together to disturb the public peace, and, being so assembled and gathered together, did unlawfully and riotously, and without authority of law, and in a manner adapted to disturb the public peace and excite public alarm, and then and there arming themselves with dangerous weapons, to-wit: loaded guns, clubs, and rocks, make an assault with said dangerous weapons upon George Hamilton, by then and there attempting to strike, shoot, and kill him, the said George Hamilton, with said unlawful weapons, the said attempt being then and there accompanied by the immediate power of execution, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

The court submitted to the jury written interrogatories, the answers to which, accompanied by the verdict, omitting formal parts, are as follows:

"Q. Did the defendants, or either of them, carry or have at the time and place named in the indictment, any kind of dangerous weapon?

"A. Yes.

"Q. What defendant, or defendants, had such dangerous weapon?

"A. Harry Barlas.

"We, the jury in the above-entitled action find the defendants, Nick Stephanus, Nick Baggles, and Harry Barlas guilty of an unlawful assembly.

(Signed) "S. M. Haynes, Foreman."

A motion was interposed to set aside the verdict and special findings, and for a judgment notwithstanding the verdict, and asking that the defendants be discharged from custody for the reason that the indictment does not charge any crime or misdemeanor, except a riot, of which charge the defendants by the verdict had been

acquitted, further specifying that the "unlawful assembly" of which defendants had been convicted was not a crime or misdemeanor under the Code. The motion was overruled, and the accused sentenced to pay a fine, and in default of payment thereof, to serve a term in the county jail; hence this appeal.

REVERSED: JUDGMENT ENTERED.

Submitted on briefs under the proviso of Rule 16 of the Supreme Court, 50 Or. 580.

For appellants there was a brief over the names of *Messrs. Ramsey & Oliver.*

For the State there was a brief over the names of *Mr. Francis S. Ivanhoe,* District Attorney, and *Mr. Andrew M. Crawford,* Attorney-General.

Opinion by MR. COMMISSIONER KING.

1. The points presented for determination are: (1) Is the verdict sufficient to sustain a judgment of conviction of riot under Sections 1913 and 1914 of the Code (B. & C. Comp.)? (1) If not sufficient for that purpose, does the verdict acquit defendants of the charge contained in the indictment? Section 1913 of the Code (B. & C. Comp.) is as follows:

"Any use of force or violence, or any threat to use force or violence, if accompanied by immediate power of execution, by three or more persons acting together, and without authority of law, is riot. Whenever three or more persons assemble with intent, or with means and preparations, to do an unlawful act, which would be riot if actually committed, but do not act towards the commission thereof, or whenever such persons assemble without authority of law, and in such manner as is adapted to disturb the public peace or excite public alarm, or disguised in a manner to prevent them from being identified, such an assembly is an unlawful assembly."

The next section provides, in substance, that if any person shall be found guilty of participating in any riot,

such person shall be punished in the manner therein specified. No provision is made for punishment of any person participating in an "unlawful assembly," nor is such assembly by the statute declared to be a crime or misdemeanor. It will be observed that the section of the statute quoted clearly defines and distinguishes an unlawful assembly from riot, which distinction is practically the same as that recognized at common law, the distinguishing features of which are stated in 29 Am. & Eng. Enc. Law (2 ed.), 342, as follows:

"If the parties assemble in a tumultuous manner, and actually execute their purpose with violence, it is a riot; but, if they merely meet on a purpose which, if executed, would make them rioters, and having done nothing, they separate without carrying their purpose into effect, it is an unlawful assembly."

2. While, where not defined by statute, we may look to the common law for a definition of the offense, we must always look to our Code to determine whether the act committed constitutes a crime. This rule has been well settled and needs no elucidation at our hands. *State* v. *Vowels,* 4 Or. 324; *State* v. *Ayre,* 49 Or. 61, 66 (88 Pac. 653: 10 L. R. A. (N. S.), 992). It will be observed from section 1913 that the Code defines "unlawful assembly," but does not there, nor elsewhere, declare a participation therein, when not accompanied by violence, to be a misdemeanor or crime, and affixes no penalty therefor. It follows that an assemblage of persons, unaccompanied by any acts such as would bring it within the charge of riot, as defined by our Code, is not a crime under our statute. Clark, Crimes (2 ed.), 1; 12 Cyc. 139, 140; *State* v. *Gaunt,* 13 Or. 115 (9 Pac. 55). True, in order to maintain a conviction for a riot, such facts must be established as will include an "unlawful assemblage," as defined by the statute; that is to say, three or more persons, when acting in such manner as to be guilty of riot, are necessarily unlawfully assembled, and

come within the statutory, as well as common-law, definition thereof, and while the assemblage in the first instance may not have been unlawful, it does become so upon the commission of such acts of violence as will constitute a riot.

3. The indictment includes a statement of facts showing an unlawful assemblage, which is followed by such statement of incidents as would, if true, constitute a riot; but it does not follow that because proof of facts disclosing an unlawful assemblage is essential to a conviction under an indictment for riot, the converse is true. Both are essential to that crime, as defined by the statute, but the lesser does not include the greater. To illustrate: "Intent" is essential to the commission of the crime of murder, but the showing of an intent alone would not sustain a conviction, for, although such intent, whether acted upon or not, constitutes a moral wrong, it does not, unless carried into execution, come within any of the crimes made punishable by our Code; and, should the statute define an "unlawful intent," such definition, standing alone, would not be sufficient to make it a crime. For the same reason the mere defining by the Code of any unlawful assembly is not sufficient to bring it within any of the crimes covered by our statute. Unlawful assembly at common law is a separate and distinct offense, and is recognized as such; and, even though it be assumed that under an indictment for riot the accused could, under the common law, be convicted of the lesser offense, it not being an offense under our Code, a conviction therefor cannot be sustained. Our attention is called to *Newby* v. *Territory,* 1 Or. 164, for the purpose of showing that a person may be convicted of either an "unlawful assembly" or a "riot" under the same indictment. In the beginning of the opinion in that case the court uses the language "riot, or unlawful assembly," but it will be observed from an examination of the opinion that the defendants there were convicted of riot. The

court evidently had in mind the language of the statute as including only the words "unlawful assembly," as one of the elements necessary to be proved against the accused in order to warrant a conviction, and certainly did not mean to use the two expressions synonymously. To do so would be to disregard all rules of distinction between the two unlawful acts, not only at common law but under the statute as well.

4. The next question with which we are confronted is: Does the finding of the jury by their verdict that there was an unlawful assemblage, including the special findings to the effect that "defendants or either of them" were armed, and defendant Barlas had a "dangerous weapon" on the occasion, amount to an acquittal of the crime charged? We think it does. The jury by their verdict merely said, in effect, that the defendants were assembled in such manner and under such circumstances that if any force or violence had resulted from such gathering, they would have been guilty of a riot. In other words, the jury found that the defendants had committed only a part of the acts essential to the proof of the commission of the crime charged, and that the principal element thereof consisting of force or violence was wanting.

5. It is a well-settled principle of law that nothing can be added to a special verdict by inference; and, when it omits to set forth any fact essential to constitute the crime charged, it amounts to an acquittal. *State* v. *Belk,* 76 N. C. 10.

6. The charge against defendants was for riot; and, if the verdict was under Section 1413, B. & C. Comp., it was bound to be either guilty or not guilty, importing either a conviction or acquittal of the crime charged (*Wells* v. *State,* 116 Ga. 87: 42 S. E. 390), while if, under Section 1412 of the Code, the special facts found are true, they must be sufficient to establish the guilt of the accused of the crime charged, in the absence of which

the same result must follow as in a failure to find the defendant guilty under a general verdict. In *State* v. *Steeves,* 29 Or. 85, 107 (43 Pac. 947, 953), in discussing the law applicable to the facts in that case, where the defendant had been indicted and tried for murder, but found guilty of manslaughter, Mr. Justice MOORE says: "The defendant, having been arraigned, entered a plea of not guilty to the indictment, and the moment the jury were sworn to try him, jeopardy attached, and, had the jury been discharged without his consent, except upon a failure to agree upon a verdict, he would stand acquitted before the law."

Again, it has been held, and we think wisely, that a consent on the part of defendant to proceedings of such vital importance would not constitute a waiver of defendant's legal rights. See *ex parte Tice,* 32 Or. 179 (49 Pac. 1038) ; *State* v. *Walton,* 50 Or. 142, 149 (91 Pac. 490: 13 L. R. A. (N. S.), 811). In the case under consideration the jury was not only sworn to try, and did try, the cause, but submitted a verdict for what it assumed was another offense, and was discharged. It can make no difference that an acquittal of the crime charged was not adverted to in the verdict, and that there was no such offense as that of which defendants were found guilty, for the manifest intention of the jury was to acquit of the crime charged and to find the defendants guilty of another and distinct supposed offense, but which other assumed crime had no legal status. If, then, the acquittal of the higher offense charged, in cases like *State* v. *Steeves,* where more than one verdict may be found, will preclude a retrial on reversal, much stronger must be the reason for holding that a verdict, although intended to find the accused guilty of something, finds them guilty of nothing; that is to say, guilty of acts which, standing alone, do not constitute a crime under the law.

The judgment of the circuit court should be reversed, and one entered discharging the defendants.

REVERSED: DEFENDANTS DISCHARGED.