Argued February 23, decided March 15, 1910.

## STATE v. SMITH.

[107 Pac. 980.]

CRIMINAL LAW—OFFENSES—COMMON-LAW OFFENSES.

1. There are no common-law offenses in Oregon; only those acts being crimes which are made so by statute.

STATUTES—AMENDMENT.

2. Where a section of a statute is amended "so as to read" in a prescribed manner, the amended section is entirely repealed; all matters not incorporated in the amendment being repealed.

CONSTITUTIONAL LAW—EX POST FACTO LAW.

3. While one convicted of crime cannot complain of a change in the penalty by amendment of the statute, under which he was sentenced if it reduces the penalty, an amendment increasing the penalty is an *ex post facto* law, within the prohibition of such laws by Section 9, Article I, Constitution of U. S., and Section 21, Article I, Constitution of Oregon.

CONSTITUTIONAL LAW—EX POST FACTO LAWS—INCREASING PENALTY FOR CRIMES.

4. Section 1768, B. & C. Comp.; punishing any one who shall assault another, being armed with a dangerous weapon, and rob him, etc., by imprisonment for not less than five, nor more than twenty years, in the penitentiary, was amended by General Laws 1909, p. 70, § 1, filed with the Secretary of State, February 9, 1909, effective 90 days thereafter, making the punishment for such offense not less than 10 years or for life, providing that the minimum punishment shall be imposed only where in the court's judgment leniency should be shown. Accused was indicted for assault and robbery, being armed with a dangerous weapon, committed on April 27, 1909, and on October 23d an indeterminate penitentiary sentence was imposed upon him. *Held,* that the penalty provided by the amendment of 1909 was *ex post facto* and unenforceable as to accused.

CRIMINAL LAW—PUNISHMENT—SENTENCE.

5. Section 1768, B. & C. Comp., having been repealed at the time of the trial, and the repealing act then in force not being applicable to accused, no penalty could be imposed upon him under either statute.

COURTS—RULE OF DECISION—FEDERAL QUESTION.

6. Whether a law is *ex post facto,* being a federal question, the decision of the United States Supreme Court is conclusive upon the question, and binding upon the State courts.

CONSTITUTIONAL LAW—DIVISION OF POWERS.

7. The judiciary cannot encroach upon the legislative department of governments; it not being the function of courts to make laws, but only to interpret them.

CONSTITUTIONAL LAW—EX POST FACTO LAWS.

8. A criminal statute imposing a penalty is *ex post facto* only so far as it applies to prior offenses; but there is nothing to prevent the repeal of an act covering a crime after the offense is committed.

STATUTES — CONSTITUTIONALITY OF STATUTES — CONSTITUTIONALITY IN PART.

9. A statute may be constitutional in part and invalid in part.

CRIMINAL LAW—PUNISHMENT—PENALTY—INDETERMINATE PENALTY.

10. Under General Laws 1905, p. 318, § 1, permitting the imposition of an indeterminate sentence upon conviction of crime, the penalty of which does not exceed 20 years' imprisonment, an indeterminate sentence cannot be imposed upon conviction for a crime the maximum penalty of which is life imprisonment.

From Marion: GEORGE H. BURNETT, Judge.

A. B. Smith, indicted as A. C. Smith, was convicted of assault and robbery, being armed with a dangerous weapon, and he appeals. Reversed, and accused discharged from custody.                    REVERSED.

For appellant there was a brief over the names of *Mr. John A. Carson, Mr. Thomas Brown, Mr. Myron E. Pogue* and *Mr. William M. Kaiser*, with oral arguments by *Mr. Carson* and *Mr. Kaiser*.

For the State there was a brief over the names of *Mr. Andrew M. Crawford*, Attorney General, *Mr. John H. McNary*, District Attorney, *Mr. Walter C. Winslow*, Deputy District Attorney, *Mr. Charles L. McNary* and *Mr. George G. Bingham*, with an oral argument by *Mr. Charles L. McNary*.

MR. JUSTICE KING delivered the opinion of the court.

July 7, 1909, the defendant, A. B. Smith, was indicted, charged with the crime of assault and robbery, being armed with a dangerous weapon, committed on April 27, 1909, and on October 20th following, he was tried and convicted; the jury recommending him to the mercy of the court. After denying a motion in arrest of judgment, the court, on October 23d, sentenced defendant to "be imprisoned in the Oregon State penitentiary, without limitation of time," being what is known as an indeterminate sentence, under an act which became a law in 1905; the effect of which is that a person may be held in custody in

the penitentiary not less than one nor more than 20 years, depending upon his conduct during incarceration and executive clemency.

The only error assigned, demanding attention, grows out of the question whether, at the time of the trial and sentence of the accused, there was any law in this State under which the sentence could be imposed. The law covering the crime charged, in force when the offense was committed, reads:

"If any person being armed with a dangerous weapon shall assault another with intent, if resisted, to kill or wound the person assaulted, and shall rob, steal or take from the person assaulted any money or other property which may be the subject of larceny, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than five nor more than twenty years." Section 1768, B. & C. Comp.

This section was amended by an act of the legislative assembly, filed in the office of the Secretary of State February 9, 1909, which, under Section 28, Article IV, Constitution of Oregon, became a law 90 days later and is as follows:

"That Section 1768 of Bellinger and Cotton's Annotated Codes and Statutes of Oregon, be and the same hereby is amended so as to read as follows: 'Sec. 1768. If any person being armed with a dangerous weapon shall assault another with intent, if resisted, to kill or wound the person assaulted, and shall rob, steal or take from the person assaulted any money or other property which may be the subject of larceny, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary for a period of not less than ten years or during the natural life of such person so convicted; *provided, however,* that the minimum punishment herein provided shall be exercised only in those cases where in the judgment of the court leniency should be shown.'" Section 1, p. 70, Gen. Laws 1909,

We are therefore confronted with the anomalous situation of the accused having been tried and convicted of an

offense committed while Section 1768 of the Code was in force, but which was, at the time of the trial and sentence, displaced by that part of the act of 1909 above quoted. Yet the person convicted was not sentenced under the provisions of either act, but under the act of 1905 (Section 1, p. 318, Gen. Laws 1905), which manifestly does not apply to 'crimes of this class; for the right to impose the sentence there provided is expressly limited to cases where the penalty may not exceed 20 years, while the maximum penalty fixed by law for the offense of which defendant was convicted, in force when the sentence was imposed, was imprisonment for life. If common-law offenses were recognized in this State, the legal difficulties presented would be easy of solution. For example: In Connecticut, in 1798, a case analogous to the one at bar was before the appellate court, in which the defendant was found guilty of burglary under an old statute, which at the time of his conviction and sentence had been repealed. A motion was made in arrest of judgment, but it was held that, as burglary was an offense at common law, a statute declaring the punishment was enforceable, notwithstanding the statute under which the crime was committed had been repealed. *Rex* v. *Vernon,* Root's Rep. 59. But the rule there applied cannot be invoked in this instance, for it is well settled that no common law offenses are recognized in this jurisdiction; hence, in order to make the enactments of the legislative department enforceable it is necessary to specify, by statute, crimes for which convictions may be secured and punishments therefor prescribed. *State* v. *Vowels,* 4 Or. 324; *State* v. *Gaunt,* 13 Or. 115 (9 Pac. 55) ; *State* v. *Nease,* 46 Or. 433 (80 Pac. 897) ; *State* v.*Ayers,* 49 Or. 66 (88 Pac. 653 : 10 L. R. A. (N. S.) 992 : 124 Am. St. Rep 1036.) It will be observed that while the act, in force at the time of the commission of the crime charged, fixed the minimum sentence at five years and the maximum at twenty years' imprisonment, the

amendment of 1909 changed the law, making the minimum sentence 10 years, and the maximum life imprisonment, and that the 1909 enactment expressly declares that Section 1768 of the Code shall be amended as there provided, and contains no saving clause.

2. It is established by the undoubted weight of authority, that where a portion of an act is amended "so as to read" in a prescribed manner the amended section is entirely repealed, and all matters contained in the original section, and not incorporated in the amendment are annulled.   Suth. Stat. Const. §§ 465, 470; End. Int. Stat. §§ 196, 239; Sedgwick, Stat. & Const. Law, 191, 599; *State ex rel.* v. *Simon,* 20 Or. 365, 370 (26 Pac. 170) ; *Portland* v. *Cook,* 48 Or. 550, 557 (87 Pac. 772: 9 L. R. A. (N. S.) 733) ; *Blakemore* v. *Dolan,* 50 Ind. 194; *State* v. *Campbell,* 44 Wis. 529; *Goodno* v. *City,* 31 Wis. 127; *Wilson* v. *Ry. Co.,* 64 Ill. 542 (16 Am. Rep. 565) ; *People* v. *Tisdale,* 57 Cal. 104; *People* v. *Hiller,* 113 Mich. 209 (71 N. W. 630.)   But whether the amendment in question entirely repeals Section 1768, or only the portion thereof with reference to the penalty, the fact remains that the change made therein provides an additional punishment for the crime there specified.   In discussing this principle Judge Cooley observes:

"As the constitutional provision is enacted for the protection and security of accused parties against arbitrary and oppressive legislative action, it is evident that any change in the law which goes in mitigation of the punishment is not liable to this objection.   But what does go in mitigation of the punishment?   If the law makes a fine less in amount, or imprisonment shorter in point of duration, or relieves it from some oppressive incident, or if it dispenses with some severable portion of the legal penalty, no embarrassment would be experienced in reaching a conclusion that the law was favorable to the accused, and therefore not *ex post facto.*   But who shall say, when the nature of the punishment is altogether changed, and a fine is substituted for the pillory, or imprisonment for whip-

ping, or imprisonment at hard labor for life for the death penalty, that the punishment is diminished, or at least not increased by the change made? What test of severity does the law or reason furnish in these cases? and must the judge decide upon his own view of the pain, loss, ignominy, and collaterial consequences usually attending the punishment? Or may he take into view the peculiar condition of the accused, and upon that determine whether, in his particular case, the punishment prescribed by the new law is or is not more severe than that under the old?" Cooley's Const. Lim. (6 ed.) 321.

3. While there is abundant authority for holding that a person convicted of a crime cannot complain of a change in penalty, if the punishment is thereby reduced or more favorable to him than under the act amended the adjudications are uniform, and almost without limit, in support of the doctrine that any additional or increased penalty, as in the case before us, is *ex post facto,* and, accordingly, within the inhibition of Section 9, Article I of the Federal Constitution, and of Section 21, Article I, of the Constitution of our State, and cannot be enforced as to an offense committed prior to the taking effect of the act making such change in the penalty. Mr. Justice MOORE, speaking for this court in *Portland* v. *Cook,* 48 Or. 550, 557 (87 Pac. 772, 774 (9 L. R. A. (N. S.) 733), states the rule thus: "The repeal of a law imposing a penalty will prevent any trial or judgment for an offense committed against it while it was in force, unless the annulling act expressly stipulates to the contrary or the penalty may be inflicted under some existing general law"—citing End. Int. Stat. § 478. And in *People* v. *Hiller,* 113 Mich. 212 (71 N. W. 631), is is held:

"The only exceptions to the rule herein stated are where the state, enacting the new legislation has a general law, which operates as a saving clause, or where the new legislation indicates very clearly that its provisions are to apply only to offenses thereafter committed. It was doubtless competent for the legislature to continue the penalty

for offenses committed under the old law, after the new law took effect, by attaching to the new law a saving clause, or by indicating in the law itself that its provisions were to attach only to offenses committed after the law became operative. * *"

4. None of the conditions adverted to in either of the above cases appear in this instance; from which it follows that the penalty prescribed in the act, as to this defendant, is *ex post facto,* and the penalty provided in the act in force at the time of the commission of the offense, having been repealed by the act in force at the date of the trial, cannot be invoked against him.  Sedgwick, Stat. & Const. Law, §§ 191, 599; End. Int. Stat. §§ 196, 239; Suth. Stat. Const. §§ 465, 470; *State* v. *Gaunt,* 13 Or. 115 (9 Pac. 55) ; *State ex rel.* v. *Simon,* 20 Or. 365, 370 (26 Pac. 170) ; *Portland* v. *Cook,* 48 Or. 550, 557 (87 Pac. 772: 9 L. R. A. (N. S.) 733) ; *United States* v. *Tynen,* 11 Wall. 88 (20 L. Ed. 153) ; *In re Medley,* 134 U. S. 160 (10 Sup Ct. 384: 33 L. Ed. 835) ; *Kring* v. *Missouri,* 107 U. S. 221 (2 Sup. Ct. 443: 27 L. Ed. 506) ; *People* v. *Hiller,* 113 Mich, 209 (71 N. W. 630) ; *Garvey* v. *People,* 6 Colo. 559 (45 Am. Rep. 531) ; *People* v. *Tisdale,* 57 Cal. 104; *Flaherty* v.*Thomas,* 12 Allen (Mass.) 428; *State* v. *Daley,* 29 Conn. 272; *Johnson* v. *People,* 173 Ill. 131 (50 N. E. 321) ; *In re Petty,* 22 Kan. 477; *Murphy* v. *Commonwealth,* 172 Mass. 264 (52 N. E. 505: 43 L. R. A. 154: 70 Am. St. Rep. 266) ; *Keller* v. *State,* 12 Md. 322 (71 Am. Dec. 596) ; *State* v. *McDonald,* 20 Minn. 136 (Gil. 119) ; *Hartung* v. *People,* 22 N. Y. 95; *Genkinger* v. *Commonwealth,* 32 Pa. 99; *State* v. *Sneed,* 25 Tex. Supp. 66; *Thomas* v. *State,* 3 Tex. App. 112; *State* v.*Van Stralen,* 45 Wis. 437.

5. As holding to the opposite effect we are cited to *Sage* v. *State,* 127 Ind. 15 (26 N. E. 667) ; *Coffin* v. *Rich,* 45 Me. 507 (71 Am. Dec. 559) ; *Nebraska* v. *Wish,* 15 Neb. 448 19 N. W. 686) ; *State v. Kates,* 149 Ind. 46 (48 N. E. 365) ; *People* v. *McNulty,* 93 Cal. 427 (26 Pac. 597: 29

Pac. 61.)    But an examination of these decisions discloses
that in every instance, where the court has so held, either
the acts charged constituted an offense at common law,
or there was either a saving clause in the act itself, else
the general laws contained a saving clause, thereby keep-
ing in force the amended or repealed act, to the extent
that any person violating the same may be subject to the
punishment therein provided.    As stated, the act in ques-
tion has no saving clause to this effect, nor is there a gen-
eral law upon the subject.    Assuming, therefore, that the
part of Section 1768 of the Code not amended remained in
force and was in effect at all times, including the date of
the sentence, if viewed in the most unfavorable legal light
possible to the accused, it can only be said that he was
convicted of having violated a provision of the statute, for
which no penalty could be imposed, being analogous in
this respect to *State* v. *Stephanus,* 53 Or. 135 (99 Pac.
428) in which the accused was found guilty of "an unlaw-
ful assembly," an act which is inhibited by the statute,
and for which no penalty is provided. As stated in *Hirsch-
burg* v. *People,* 6 Colo. 145, 147:   "A conviction could not
be had under the repealed statute because of its repeal;
and clearly not under the last act, because it was and
could only be prospective in its operation.    The former
statute becomes as if it had never existed; and the new
statute commences as if none had preceded it."

6. This is, without doubt, the law, and although much
to be regretted, the conclusion reached is unavoidable,
without overruling a uniform course of decisions by the
ablest jurists and highest courts, where the matter has
been considered in both England and in this country.
Further discussion of the controversy would seem useless,
for the matter has been determined adversely to the con-
tention of the State by the United States Supreme Court
in *Re Medley,* 134 U. S. 160 (10 Sup Ct. 384: 33 L. Ed.
835), and other cases above cited, and, since it is a federal

question, the conclusion there announced is decisive and binding upon all state courts.

7. To hold otherwise would violate the settled policy of our Federal and State governments since their inception, to the effect that the judiciary shall not encroach upon the legislative departments of government. It is not the function of courts to make laws, but to interpret them. As summarized by Mr. Justice BEAN in *State ex rel.* v. *Simon,* 20 Or. 365, 373 (26 Pac. 170, 172) :

"Courts 'must not, even in order to give effect to what they may suppose to be the intention of the legislature, put upon the provisions of a statute a construction not supported by the words, even although the consequences should be to defeat the object of the act.' Smith's Stat. Const. § 714. This is a case, it would seem, where the legislature has omitted by mistake or otherwise to make the necessary provisions to carry out its intention, but we cannot by construction supply these omissions. As was held by Davis, J., 'It is always competent for the legislature to speak clearly and without equivocation, and it is safer for the judicial department to follow the plain and obvious meaning of an act, rather than to speculate upon what might have been the views of the legislature in the emergency which may have arisen. It is wiser and safer to leave to the legislative department to supply a supposed or actual *casus omissus* than to attempt to do so by judicial construction.' *People* v. *Woodruff,* 32 N. Y. 364. Courts cannot supply omissions in legislation, nor afford relief because they are supposed to exist. To adopt the language of Mr. Justice WOODS, in *Hobbs* v. *McLean,* 117 U. S. 579 (6 Sup. Ct. 876: 29 L. Ed. 940) : 'When a provision is left out of a statute, either by design or mistake of the legislature, the courts have no power to supply it. To do so would be to legislate and not to construe.' 'We are bound,' said Justice BULLER, in *Jones* v. *Smart,* 1 T.R. 44, 'to take the act of parliament as they have made it; a *casus omissus* can in no case be supplied by a court of law, for that would be to make laws; nor can I conceive that it is our province to consider whether such a law that has been passed be tyrannical or not;' and Mr. Justice STORY, in *Smith* v. *Rines,* 2 Sumn. 354 [Fed. Cas. No. 13,100], observes: 'It is not for courts of justice *proprio motu* to

provide for all defects or mischiefs of imperfect legislation.' *King* v. *Burrell,* 12 A. & E. 460; *Hammond* v. *Eiffe,* 3 Q. B. 910; *Bloxam.* v. *Elsee,* 6 B. & C. 169; *Bartlett* v. *Morris,* 9 Port. [Ala.] 266."

8. It is argued that, if the act under consideration is *ex post facto* and void, it could not affect the defendant; for the reason that since the offense was committed while the old law was in force defendant cannot occupy the position of insisting, on one hand, that the new law is *ex post facto,* and therefore not effective, and on the other that it is in force for the purpose of repealing a section of the statute. Like reasoning was invoked in a dissenting opinion in *Re Petty,* 22 Kan. 489. The fallacy of this position lies in assuming appellant's contention to be that the entire act is void. The act is valid in all its parts as to any offense coming under it, committed after it became a law, and therefore effective, so far as it operates to repeal or amend the former statute, as is that part relating to the penalty, so far as applicable to violations thereof after it became a law. And it is only contended that the ineffectual part is that relating to the penalty, so far as it might apply to the accused, because the crime for which he is charged was committed prior to the date the act became a law; and that if the penalty was intended to apply to any act or offense committed prior to such time, it is void to that extent. There is nothing to prevent a repeal of an act covering a crime after the offense is committed, and it is only where an attempt is made to make a law apply to prior offenses that it becomes *ex post facto.*

9. In other words, the declaration that Section 1768 be amended is not void, but is clearly within the legislative powers of the State. Had the legislature so desired it could have repealed the section entirely, without substituting anything therefor; and had this occurred the State would have been placed in no worse position with reference to defendant than under the present situation.

The moment the act became a law, therefore, it became effective as to its provision, repealing the former act, and as to subsequent offenses the penalties provided were enforceable; yet the fact remains that at the moment the former penalties were abolished a new and greater penalty was provided, from which it follows that defendant's legal status is the same as if Section 1768 of the Code contained no penalty, and that subsequent to the offense a law was passed providing one; clearly bringing him within the protection of the constitutional provision, inhibiting both national and state governments from enacting *ex post facto* laws. Again, it is so well settled that it may be deemed elementary that an act may be unconstitutional in part, and effective in another part, furnishing an additional reason why the position of counsel for the State is untenable.

10. The limitation placed upon the court, in imposing sentence under the act of 1905, necessarily invalidates the sentence appealed from. But we have deemed it important that the main points presented, and above considered, be determined at this time; for without a statute under which some sentence may be imposed, no further proceeding in the case could be had. We are not unmindful, however, of the unfortunate and embarrassing situation in which the State finds itself; for under Section 1486 of the Code, when a criminal case is reversed, it is incumbent upon the appellate court, unless a new trial is ordered, to direct that the defendant, if in custody, be discharged. But here no grounds appear upon which to remand the cause for a new trial. The defendant has been tried, and under the most favorable view possible to the State the irregularity was not in the trial, but in the application of a penalty after trial; and a retrial could not change the situation, hence would be useless; while the discharge of the prisoner releases from the indictment one guilty of a grave offense. However, this misfortune is one for

which the lawmaking. department alone is responsible. And it were better that the accused, under such circumstances, should escape punishment entirely, if such must occur, than for the courts, under the guise of subserving the ends of justice in particular instances, to assume that they may rise higher than the law, and disregard the plain mandates of both the Federal and State Constitutions.

It follows that the judgment of the trial court must be reversed, and the defêndant discharged from custody upon this indictment; and it is so ordered. But we do not wish to be understood as ordering his release upon any charges or indictments, if any, upon which he may be held, other than "robbery, being armed with a dangerous weapon." REVERSED.