Argued and submitted May 11; resubmitted and reassigned June 3, sentence of death
affirmed August 4, 1994

# STATE OF OREGON,
*Respondent,*

*v.*

# MARK ALLEN PINNELL,
*Appellant.*

## (CC C88-00-26CR; SC S39190)
877 P2d 635

Walter J. Todd, Salem, argued the cause and filed the brief for appellant.

Brenda JP Rocklin, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GRABER, J.

Fadeley, J., filed a dissenting opinion.

Durham, J., filed a dissenting opinion in which Fadeley, J., joined.

## GRABER, J.

Defendant was convicted of aggravated murder and sentenced to death in 1988. This court affirmed that conviction but vacated the sentence of death and remanded the case to the trial court for a new penalty-phase proceeding. *State v. Pinnell*, 311 Or 98, 806 P2d 110 (1991).

On remand, the trial court conducted a new penalty-phase proceeding, and defendant again received a death sentence. The case comes before us on automatic and direct appeal from the sentence of death following remand. ORS 163.150(1)(g). In this appeal, defendant asks that his death sentence be vacated or, in the alternative, that his sentence be reduced to life in prison with the possibility of parole.[1] We affirm.

### STATUTORY SPEEDY TRIAL CLAIM

■ In his first assignment of error, defendant contends that the trial court erred in denying his motion to dismiss the penalty-phase proceeding on remand. That motion was based on the claim that the penalty-phase proceeding on remand did not begin in a timely manner under the speedy trial statutes, which are set out below.

The appellate judgment in *State v. Pinnell, supra*, became effective on April 19, 1991. On April 28, 1991, defendant sent to the district attorney a notice

"requesting the district attorney to bring the defendant to trial upon sentencing on the above encaptioned criminal matter pursuant to ORS 135.760(1) and pursuant to ORS 135.760(2) [and] advises the district attorney that the defendant is currently incarcerated in the Oregon State Penitentiary serving a twenty-year sentence, and further advises the district attorney that pursuant to ORS 135.763(1) the defendant demands such trial to occur within 90 days of the district attorney's receipt of this notice and further, that the

---

[1] Defendant's brief also asks that this court reverse his conviction for aggravated murder. That relief is not available in this second appeal. As noted in the text, this court affirmed defendant's conviction for aggravated murder on defendant's first appeal, concluding that there was error only in the penalty-phase proceeding. The proceeding on remand related only to the penalty to be imposed for defendant's conviction. *See* ORS 163.150(5)(a) ("No error in the sentencing proceeding shall result in reversal of the defendant's conviction for aggravated murder.").

defendant does not consent to any continuance herein pursuant to ORS 135.763(2)."

The district attorney received that notice on or about May 1, 1991.

On or about August 15, 1991, defendant filed a *pro se* motion to dismiss "all trial proceedings" with prejudice in this "criminal sentencing matter" on "the grounds that the defendant has not been brought to a sentencing trial by the district attorney within 90 days, pursuant to ORS 135.763(1)." The trial court considered the issue on more than one occasion and eventually denied the motion on December 20, 1991. The penalty-phase proceeding on remand commenced on March 9, 1992.

ORS 135.760 provides:

"(1) Any inmate in the custody of the Department of Corrections against whom there is pending at the time of commitment or against whom there is filed at any time during imprisonment, in any court of this state, an indictment, information or criminal complaint charging the inmate with the commission of a crime, may give written notice to the district attorney of the county in which the inmate is so charged requesting the district attorney to prosecute and bring the inmate to trial on the charge forthwith.

"(2) The notice provided for in subsection (1) of this section shall be signed by the inmate and set forth the place and term of imprisonment. A copy of the notice shall be sent to the court in which the inmate has been charged by indictment, information or complaint."

ORS 135.763(1) provides:

"The district attorney, after receiving a notice requesting trial under ORS 135.760, shall, within 90 days of receipt of the notice, bring the inmate to trial upon the pending charge."

ORS 135.765(1) provides:

"On motion of the defendant or the counsel of the defendant, or on its own motion, the court shall dismiss any criminal proceeding not brought to trial in accordance with ORS 135.763."[2]

---

[2] The speedy trial statutes were amended in 1993. Or Laws 1993, ch 542, §§ 1, 2. Those amendments do not affect the issues presented here.

Defendant argues that "[t]he resentencing proceeding[, that is, the penalty-phase proceeding] is a trial," because it involves an "unresolved criminal proceeding, based on an indictment, that is procedurally exactly like a trial." As a result, defendant argues, ORS 135.760 through 135.765 apply to his penalty-phase proceeding. The state counters that "[t]he 90-day speedy trial statutes do not govern sentencing or resentencing proceedings," because, after a defendant has been convicted of a charge, the "indictment, information, or criminal complaint" against the defendant no longer is "pending at the time of commitment," as required by ORS 135.760(1).

To interpret the speedy trial statutes, we look for the legislative intent.

"In interpreting a statute, the court's task is to discern the intent of the legislature. To do that, the court examines both the text and context of the statute. That is the first level of our analysis.

"In this first level of analysis, the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent. * * *

"Also at the first level of analysis, the court considers the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes. * * *

"If the legislature's intent is clear from the above-described inquiry into text and context, further inquiry is unnecessary."

*PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (citations omitted).

The text of ORS 135.760(1) demonstrates that the statute applies to proceedings to determine a defendant's guilt. First, the statute refers to an inmate against whom an accusatory instrument is "pending" or "filed," "charging the inmate with the commission of a crime." That wording assumes that the inmate has not yet been adjudged guilty of committing the charged crime. Second, the statute provides for a notice asking the district attorney to "prosecute and bring the inmate to trial forthwith." The wording of the statute presupposes that no trial concerning the charged crime has yet begun; by contrast, an inmate who, after a trial,

has been adjudged guilty of committing the charged crime already has been "prosecuted" for the commission of that crime. And, an inmate who has been found guilty after a trial no longer simply is "charg[ed] with the commission of a crime"; at that point, the inmate has, in the eyes of the law, committed the crime.

The text of ORS 135.763(1) is to a similar effect. It requires a district attorney who has received a speedy trial notice under ORS 135.760 to "bring the inmate to trial upon the pending charge." Under that wording, the charge must be "pending." In a penalty-phase proceeding following a trial at which a defendant has been found guilty, there no longer is a "pending" charge.

The text makes the legislative intent clear. ORS 135.760, 135.763, and 135.765 do not apply to proceedings in a capital case that occur after this court has vacated the defendant's sentence and has remanded the case to the trial court for a new penalty-phase proceeding.[3]

The trial court did not err in denying defendant's motion, based on those statutes, to dismiss the penalty-phase proceeding on remand.

## "TRUE LIFE" SENTENCING OPTION

### A. *"Motion to Dismiss/Demurrer"*

During his penalty-phase proceeding on remand, defendant filed a motion to dismiss that proceeding and a demurrer to the underlying indictment. In his "Motion to Dismiss/Demurrer," defendant argued, among other things, that the application to him of the "true life" sentencing

---

[3] Nothing in the aggravated murder sentencing statute suggests a different conclusion. *See* ORS 163.150(1)(a) (providing in part that, on a finding that a defendant is guilty of aggravated murder, the trial court shall conduct a sentencing proceeding; if a juror "is unable to perform the function of a juror, the juror shall be dismissed from the sentencing proceeding," and an alternate juror shall be named, "notwithstanding the fact that the alternate juror did not deliberate on the issue of guilt"; "[t]he court shall instruct the jury that all evidence previously offered and received may be considered for purposes of the sentencing hearing"). A trial for aggravated murder is one trial, which begins when the guilt phase begins. *See State v. Pinnell*, 311 Or 98, 102 n 3, 806 P2d 110 (1991) ("[a]ggravated murder trials are divided into two phases, the guilt phase and the penalty phase" (quoting *State v. Pratt*, 309 Or 205, 210, 785 P2d 350 (1990)); *State v. Montez*, 309 Or 564, 604, 789 P2d 1352 (1990) (penalty-phase proceeding is a continuation of guilt-phase trial).

option[4] amounted to imposition of an *ex post facto* law in violation of Article I, section 21, of the Oregon Constitution,[5] and Article I, section 10, of the Constitution of the United States.[6] The trial court overruled the "Motion to Dismiss/ Demurrer," reasoning (as pertinent here) that "true life" was a permissible sentencing option in defendant's case. In defendant's second assignment of error, he argues that the trial court erred in so doing.

■ In *State v. Langley*, 318 Or 28, 861 P2d 1012 (1993), and *State v. Wille*, 317 Or 487, 501-05, 858 P2d 128 (1993), this court held that the amendment adding the sentencing option of "true life" to the aggravated murder penalty statute does not apply to defendants who committed their crimes before July 19, 1989, the effective date of the amendment. In this case, defendant murdered the victim on September 19, 1985. Accordingly, the trial court erred in concluding that "true life" was a sentencing option applicable to defendant.

■ Nevertheless, the trial court did not err in overruling the "Motion to Dismiss/Demurrer." First, a demurrer to an indictment must be based on defects appearing on "the face" of the accusatory instrument. ORS 135.630; 135.640. The possible application of a "true life" sentence to defendant did not appear on the face of the indictment. Neither is the possible application of that sentence among the other grounds provided in ORS 135.630 for demurrers.[7]

---

[4] *See* ORS 163.105(1) (providing for the sentencing option of "life imprisonment without possibility of release"); ORS 163.150(2)(a) (providing that, if the penalty-phase jury does not impose a sentence of death, "the trial court shall sentence the defendant to life imprisonment without possibility of release or parole," unless 10 or more members of the jury find sufficient mitigating circumstances to warrant a sentence of life imprisonment for a minimum of 30 years).

[5] Article I, section 21, of the Oregon Constitution provides in part that "[n]o *ex post facto* law * * * shall ever be passed * * *."

[6] Article I, section 10, of the Constitution of the United States provides in part that "[n]o State shall.* * * pass any * * * ex post facto Law * * *."

[7] ORS 135.630 provides:

"The defendant may demur to the accusatory instrument when it appears upon the face thereof:

"(1) If the accusatory instrument is an indictment, that the grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable within the county;

"(2) If the accusatory instrument is an indictment, that it does not substan-

■ Second, the relief of dismissal requested by defendant in the "Motion to Dismiss/Demurrer" does not follow logically from defendant's argument. If there properly were two sentencing options, rather than three, defendant was entitled to jury instructions presenting those two options, rather than three. *See State v. Langley, supra,* 318 Or at 30-31 (jury instruction advising jurors that life imprisonment without possibility of parole was the presumptive sentence when death was not supported by the jury's findings was erroneous, because the application of that sentence to the defendant violated the *ex post facto* provisions of the Oregon and United States Constitutions). Defendant was not entitled, however, to dismissal of the entire penalty-phase proceeding. The pertinent cases hold only that a "true life" sentence is not among the permissible sentencing options for a defendant who committed a murder before July 19, 1989; they do not suggest that such a defendant cannot be sentenced *at all* upon conviction for aggravated murder.

The trial court did not err in overruling the "Motion to Dismiss/Demurrer" on the ground argued by defendant.

B. *Jury Instructions*

The trial court gave instructions that presented three, rather than two, sentencing options. Defendant did not object to those instructions, did not submit an alternative instruction presenting only two sentencing options, and did not assign error to the instructions.

> "Ordinarily, a party's failure to request a proper instruction precludes appellate relief for the trial court's refusal to give the instruction. *State v. Francis,* 284 Or 621, 626, 588 P2d 611 (1978). Similarly, a failure to except to the trial court's instruction on a specific theory generally bars appellate relief on that theory. ORCP 59H, made applicable to

tially conform to the requirements of ORS 132.510 to 132.560, 135.713, 135.715, 135.717 to 135.737, 135.740 and 135.743;

"(3) That the accusatory instrument charges more than one offense not separately stated;

"(4) That the facts stated did not constitute an offense;

"(5) That the accusatory instrument contains matter which, if true, would constitute a legal justification or excuse of the offense charged or other legal bar to the action; or

"(6) That the accusatory instrument is not definite and certain."

criminal cases by ORS 163.330(2); *Delaney v. Taco Time Int'l.*, 297 Or 10, 18, 681 P2d 114 (1984). Finally, a party must assign error in order to have the appellate courts consider the issue. ORAP 5.45(2). Defendant failed in all three particulars."

*State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

 ORAP 5.45(2) provides that, notwithstanding such failures, "the appellate court may consider errors of law apparent on the face of the record." Assuming that the instructional error in this case meets the requirements of that rule and thus permits us, in our discretion, to consider the error,[8] defendant is not entitled to relief. The error was harmless.[9] The jury unanimously and affirmatively voted to impose the death penalty and thus rejected both forms of life imprisonment presented by the instructions, including the "ordinary life" sentence that was applicable to defendant's crime. *Compare State v. Wille, supra* (the defendant was sentenced to "true life" and, therefore, was entitled to obtain relief).

## REMAINING ARGUMENTS

Defendant makes several additional assignments of error. We have considered all of them and every argument made in support thereof. Any assignment of error or argument not discussed in this opinion either has been discussed by this court in previous cases and resolved against defendant or is not well taken. We hold that no error occurred in any of those remaining instances assigned as error.

## CONCLUSION

The judgment of conviction for aggravated murder was affirmed in *State v. Pinnell, supra*. The sentence of death is affirmed.

---

[8] Defendant's failure to raise this issue at trial in the context of jury instructions may have been a tactical choice, aimed at reducing the likelihood of receiving the death penalty. *See State v. Wille*, 317 Or 487, 504, 858 P2d 128 (1993) (legislature's addition of "true life" option was intended to decrease probability of jury's imposing the death penalty).

[9] Under state law, an error is harmless if there is "little likelihood that the error affected the verdict." *State v. Hansen*, 304 Or 169, 180-81, 743 P2d 157 (1987). Under federal law, an error is harmless if the appellate court concludes beyond a reasonable doubt that the error did not contribute to the conviction. *Chapman v. California*, 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967).

**FADELEY, J.,** dissenting.

The homicide in this case occurred in 1985, at a time when we know that the Oregon statute regulating the jury's imposition of the death penalty did not meet federal constitutional muster. That invalid statute had been initiated and adopted in 1984. In the first case under the 1984 statute to reach it, the Supreme Court of the United States vacated the death sentence imposed under that statute because of constitutional defects in that statute and remanded the case to this court. *Wagner v. Oregon*, 492 US 914, 109 S Ct 3235, 106 L Ed 2d 583 (1989). Thereafter, this court, by a majority vote, added 100 words and a completely new "fourth" question to the statute in an effort to save it from the constitutional infirmity identified by the Supreme Court of the United States. *See State v. Moen*, 309 Or 45, 102-04, 786 P2d 111 (1990) (Fadeley, J., dissenting, detailing the majority's 100-word addition to statute); *State v. Williams*, 313 Or 19, 44-45, 828 P2d 1006, *cert den* ___ US ___, 113 S Ct 171, 121 L Ed 2d 118 (1992).

This court had no authority to make a substantial, significant, and after-the-fact addition to the 1984 statute that the people, by their vote adopting it, did not include. As was stated in *State v. Smith*, 56 Or 21, 29, 107 P 980 (1910), "[i]t is not the function of courts to make laws, but to interpret them." Only the legislative branch may enact penal laws. *State v. Isom*, 313 Or 391, 395, 837 P2d 491 (1992) ("the power of punishment is legislative"). Yet, the majority has affirmed a punishment made possible only by its own extensive amendment to the death penalty statute. From that judicial arrogation of the sole power of a separate and equal branch of the government, I feel compelled to dissent.

Even after that unlawful "amendment," the statute still would be constitutionally defective, in my view. One example of such a defect is the open ended, standardless question added after *Wagner v. Oregon, supra*, was decided. The "fourth question," added by judicial legislation, simply asks the jury to answer "yes" or "no" to the query whether "defendant should" receive the death sentence." *State v. Wagner*, 309 Or 5, 19, 786 P2d 93 (1990), *cert den* 498 US 879 (1990) (*Wagner II*). It was later added, years after the murder in this case to the statute, ORS 163.150(1)(b)(D). Neither the

judicial nor the later legislative amendment to the statute includes standards to be applied in answering that question.[1] The question simply asks the jury's opinion. When the jury finds as fact that it believes "yes" is the answer, that's it. The death penalty must follow. No court has any discretion in that penalty scheme. The state law does not permit either judicial review or judicial modification of the substance of that answer.

The resulting lack of review of the penalty is the same as the lack of judicial review, or power to modify, that the Supreme Court of the United States has held in another context to violate the Due Process Clause of the Fourteenth Amendment. *See Oberg v. Honda Motor Co.*, 316 Or 263, 275, 851 P2d 1084 (1993), *rev'd* 512 US___, 114 S Ct 2331, 129 L Ed 2d 336 (1994) (requiring that appellate review of punitive damage award be made available as matter of due process); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 US 1, 111 S Ct 1032, 113 L Ed 2d 1 (1991) (due process requires post-verdict review including power to modify the extent or degree of the verdict). I find it inconceivable that a punitive verdict of death is not entitled to the same due process as applies to dollar-amount verdicts.[2] No doubt there is as much an "acute danger of arbitrary deprivation" of life as there is of "property" to which the Supreme Court spoke in *Oberg*. 129 L Ed at 349. The standardless question, and the lack of any review of the answer a jury chooses to give to that death penalty question, are therefore as lacking in due process and as unconstitutional as the punitive damages award.[3]

---

[1] The statute requires that the jury be instructed to answer the question on the basis of what "the jurors believe would justify a sentence less than death." ORS 163.150(1)(c)(B). The jurors are instructed, in forming their "belief," to consider the circumstances of the offense and defendant's character and background. 309 Or at 20.

[2] The arbitrary nature of the unreviewable answer to the death question is only deepened by exclusion from the jury panel of all members of that fraction of the community who, in the abstract, do not favor the death penalty.

[3] *Tuilaepa/Proctor v. California*, 512 US ___, 114 S Ct 2630, 129 L Ed 2d 750 (1994), are not to the contrary but, instead, support questioning of the adequacy of Oregon's "fourth" question and accompanying instruction. In California, the jury must find one or more of the statutorily prescribed special circumstances to be present in relation to the homicide before the defendant is even eligible for the death penalty. But that verdict, determining death eligibility, neither imposes the death

For the foregoing reasons, I would hold that defendant's death sentence in this case should be vacated and the case remanded for resentencing.

I respectfully dissent.

**DURHAM, J.,** dissenting.

For the reasons expressed in the dissenting opinion in *State v. Wagner*, 309 Or 5, 20, 786 P2d 93 (Linde, J., dissenting), *cert den* 498 US 879 (1990) [*Wagner II*], I dissent from the majority's disposition of defendant's second assignment of error, in which he argues that the trial court erred in

---

penalty nor escapes post-verdict judicial review for due process purposes. A California death penalty may be imposed only among those eligible.

After death eligibility is determined, another California statute then requires a separate jury inquiry that selects, from among those eligible, which ones shall be executed. In making that selection in California, the jury does *not* decide whether defendant "should be" put to death. Instead it decides whether one or more of the fact-based, statutorily specified factors exist. The factors are much more specific than is the question in *Wagner II* or ORS 163.150(1)(b)(D). They are of a factual nature, not an open-ended inquiry as to "beliefs" about execution. The California statute, of factors a jury must find to impose death, provides:

"(a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.

"(b) The presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.

"(c) The presence or absence of any prior felony conviction.

"(d) Whether or not the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance.

"(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

"(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.

"(g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.

"(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the [e]ffects of intoxication.

"(i) The age of the defendant at the time of the crime.

"(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.

"(k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime." Cal Penal Code Ann § 190.3 (West 1988).

overruling his demurrers to the indictment. This court should reconsider its holding in *Wagner II* and determine whether defendant is entitled to the relief he seeks in that assignment.

Fadeley, J., joins in this dissenting opinion.