Argued January 11, decided February 8, 1910.

## STATE v. SMITH.

[106 Pac. 797.]

CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.

1. In a prosecution for burning the sheep-shearing shed of W., testimony by a self-confessed accomplice that defendant thereafter assisted in burning a cook tent, destroying a fence, and attempting to poison sheep belonging to W., as tending to show a conspiracy by defendant and the witness to destroy property of W. so as to dissuade him from continuing in the sheep-raising business in that section, was inadmissible.

CRIMINAL LAW—COMMON-LAW OFFENSES.

2. There are no indictable common-law offenses in Oregon.

CONSPIRACY—PROSECUTION AND PUNISHMENT—PARTIES.

3. While two persons are necessary to constitute an agreement to do an unlawful act, it is not necessary to make both parties defendant in a criminal prosecution, but one alone may be convicted upon proof that there was a conspiracy of which he was a member.

CRIMINAL LAW—EVIDENCE—OTHER OFFENSES.

4. In a prosecution for conspiracy, where the parties conspired to do an unlawful act, evidence of other transactions in furtherance of the common enterprise is relevant; but, when the unlawful agreement ends, evidence of other subsequent overt acts, or of declarations thereafter made

by either of the parties, is inadmissible, unless they relate to a subsisting interest in the property fraudulently acquired pursuant to the conspiracy.

CRIMINAL LAW—EVIDENCE—INTENT.

5. Under Section 788, subd. 2, B. & C. Comp., providing that it will be presumed that an unlawful act was done with an unlawful intent, in a prosecution for burning a building, where defendant pleaded not guilty, the motive which induced the burning was immaterial, and testimony of subsequent crimes committed against the same party is inadmissible as tending to show intent.

INDICTMENT AND INFORMATION—EVIDENCE—OTHER OFFENSES.

6. Where an indictment charged the defendant with burning a building in which sheep were sheared and their wool sacked, it was error to admit testimony tending to prove subsequent offenses committed by defendant, for the accused cannot be convicted by evidence that he committed some other crime.

From Crook:  WILLIAM L. BRADSHAW, Judge.

For appellant there was a brief and oral arguments by *Messrs. Weatherford & Wyatt.*

For the State there was a brief over the names of *Mr. Frank Menefee, Mr. H. S. Wilson* and *Mr. Andrew M. Crawford,* with an oral argument by *Mr. Menefee.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The defendant, C. Sam Smith, was convicted of the crime of arson, and appeals from the judgment which followed. His counsel contend, *inter alia,* that errors were committed in receiving, over objection and exception, testimony tending to prove distinct and independent collateral offenses. The State undertook to establish the defendant's connection with the crime charged by the testimony of Larkin Elliott, a self-confessed accomplice, to the effect that at the time alleged he and Smith were engaged in raising cattle in Crook County, the profit of which occupation was much deteriorated by the close pasturage on the range of sheep owned by J. N. Williamson; that in order to dissuade him from continuing his business in their section they determined to destroy some of his property; that pursuant to such conclusion they, on March 25, 1908, set fire to and burned a building in which he sheared sheep and sacked wool, which structure is the

building described in the accusation, and that upon returning from the spoliation, the witness and the defendant passed on horseback through a certain natural depression or ravine. Elliott also stated upon oath that he thereafter informed the defendant that the latter was suspected of having burned Williamson's building, saying the people asserted their horses' tracks had been followed on the return from the fire through "Long Hollow," whereupon the defendant, in the presence and hearing of the wife of the witness, replied: "You know better than that, because we didn't go back there, and they are clear off a mile about that. I don't care what they think just as long as they can't prove it." Mrs. Elliott's testimony corroborates that of her husband, respecting Smith's declarations asserted to have been made in her hearing, and her testimony in this particular is the only confirmatory evidence which in any manner tends to support the sworn statements of the accomplice. Elliott, over objection and exception, was permitted to testify that on March 27, 1908, he and the defendant mingled salt, concentrated lye, and squirrel poison and placed the compound at the entrance to a corral where, at night, a flock of Williamson's sheep was kept; that at the same time they set fire to and burned a tent, bedding, camp utensils, and supplies occupied and used by the herder who then had charge of such sheep; and that on April 6, 1908, the witness and Smith also cut the wire from about a mile of Williamson's fence. The defendant, as a witness in his own behalf, specifically denied all incriminating testimony that had been introduced against him, and offered evidence to the effect that Elliott had threatened to make trouble for him. It is maintained by counsel for the State that the testimony so complained of tended to prove a plan or system, adopted by the defendant, to destroy the property of J. N. Williamson; and, such being the case, no error was committed as alleged. A few of the cases relied upon to sup-

port the legal principle so asserted will be examined. Thus, in *State* v. *Savage,* 36 Or. 191 (60 Pac. 610: 61 Pac. 1128) it was held that evidence of a previous attempt on the part of the defendant and an accomplice to induce another person to join them in robbing a train was admissible as tending to establish a system which, being subsequently carried into effect, eventuated in the larceny of money from an express company by Savage and his confederate, when it further appeared that the train referred to carried the goods, money, and valuables which were intrusted for that purpose to the express company mentioned. The system there adverted to had become effective by the commission of the crime for which the defendant was then being tried, and, having been indicted for the subsequent larceny, evidence tending to prove prior preparation, or that unsuccessful attempts to commit the offense which was later consummated had been made, was properly held admissible. *Commonwealth* v. *McCarthy,* 119 Mass. 354; *Commonwealth* v. *Bradford,* 126 Mass. 42; *State* v. *Ward,* 61 Vt. 163 (17 Atl. 483.)

In *Guthrie* v. *State,* 16 Neb. 667 (21 N. W. 455) the plaintiff in error was indicted for the crime of receiving bribes. At his trial the testimony established that as marshal of the city of Omaha, he had received from Charles Branch, money paid pursuant to an agreement that upon the receipt thereof the gamblers who gave it might continue their occupation unmolested. The marshal, having been convicted, appealed, contending *inter alia,* that an error was committed in receiving evidence of separate and distinct acts of bribery not specified in the accusation. In affirming the judgment, it is said: "The testimony shows that Branch was, in one sense, the agent of plaintiff in error in these transactions, as well as the representative of other gamblers. When accosted by them, plaintiff in error directed them to see Branch, who would tell them what to do, and when they wanted to pay

him money in pursuance of the contract made with Branch, he told them to do as they had done before—see Branch. It is clearly shown that the agreement was a continuing one, and contemplated a system of payments to be made in the future, and for which the same course was to be pursued by plaintiff in error as for the $300. It was known by plaintiff in error when Branch received money, and no gambling house was molested after its share of the money had been paid. He was fully advised of what occurred in the workings of the plans and designs, not only at the time of the receipt of the $300, but at all times, so long as the system under which they were working continued. This system was fully developed and exposed by Branch in his testimony. It was properly admitted as a part of the transaction in which the $300 was paid by Branch to plaintiff in error. The fact of the carrying out of this system was proper evidence for the purpose of corroborating the testimony of Branch, and showing the purpose, understanding, and intent with which the money was received as alleged in the indictment, and for the purpose of showing the system under which these several transactions were had. For these purposes the testimony was competent." It is impossible to determine, from an examination of the opinion in that case, whether or not Guthrie received money from the players for stakes before or after the time charged. We conclude, however, that the rule recognized in Nebraska demands that for the purpose of establishing a system to commit crime approved by an accused party, the plan or scheme necessarily culminates when the offense specified in the indictment is alleged to have been committed, for in *Cowan* v. *State,* 22 Neb. 519, 525 (35 N. W. 405, 408), Mr. Chief Justice MAXWELL, in referring to the admission of testimony tending to prove a separate substantive offense, says: "Except in cases where it is necessary to show guilty knowledge, it is not admissible to prove at another time

and place the accused committed, or attempted to commit, a crime similar to that with which he stands charged, as it cannot be expected the accused will be prepared to disprove collateral attacks of this character. The law, therefore, excludes such evidence." What is said in *Guthrie* v. *State,* 16 Neb. 667 (21 N. W. 455), in relation to the corroboration of an accomplice can have no application to the rule in this State, where practice is governed by statute (Section 1406, B. & C. Comp.), for in Nebraska, evidently no such enactment exists, since it is there held, in accordance with the principles of the common law, that the jury may convict on the evidence of an accomplice alone. *Olive* v. *State,* 11 Neb. 1, 30 (7 N. W. 444.)

In *Barton* v. *State,* 28 Tex, App. 483, (13 S. W. 783), the plaintiff in error, was charged with placing a large piece of timber and rocks upon the track of a railroad, and the court, referring to his conviction, says: "Upon the trial, over objections made by defendant, the state was permitted to prove another obstruction in addition to the one charged in the indictment, which other obstruction was made on the same night, and very soon after the first one, but at a point on the railroad some three-fourths of a mile distant from the place of the first obstruction. It was proved that the defendant assisted in placing both obstructions upon the track. There was no error in admitting the testimony as to the second obstruction. Although the second obstruction constituted a separate and distinct transaction from that charged in the indictment, still the two offenses were committed contemporaneously, and the commission of the second was admissible for the purpose of showing the motive or intent with which the first was committed, and also for the purpose of developing the *res gestae* of the first offense." In that case the similar criminal acts were so connected by the accused with respect to the circumstances of time and locality, that they evidently formed an inseparable

transaction, thereby constituting an exception to the general rule respecting the admission of testimony tending to prove an independent offense.

In *Kramer* v. *Commonwealth,* 87 Pa. 299, the plaintiff in error was indicted for setting fire to and attempting to burn a building, alleged to have been done May 23, 1877. At his trial evidence was received over objection and exception tending to prove a subsequent attempt made two days after the prior undertaking, to burn the same building, and it was held that no error was thereby committed. In affirming the judgment it is said in a *per curiam* opinion, with reference to the admission of evidence of the subsequent attempt. "The offer was not to prove an independent offense on the trial of a case having no connection with it, as in *Schaffner* v. *Commonwealth,* 22 P. F. Smith [72 Pa.] 60 (13 Am. St. Rep. 649), but it was to prove acts immediatelly after the first attempt to burn the hotel which tended to show a guilty purpose in Kramer's mind, such as would make it quite probable that he was the same person who made the former attempt. It was a circumstance in the chain of proof:" In the case at bar the building described in the formal accusation was totally destroyed. The burning of the tent, the scattering of the combined corrosive and poisonous substance, and the cutting of the wire from the fence were separate and independent offenses subsequently perpetrated, and did not relate to the same property. Nor were such crimes connected in any manner by time, place, or circumstance with the destruction by fire of the building in question; and, such being the case, we do not think that the rule announced in *Kramer* v. *Commonwealth,* 87 Pa. 299. can have any application herein.

2. Attention is called by counsel for the State to the legal principle which governs the admission of testimony in cases of conspiracy. Our statute regulating the order of proof provides that, after evidence of a conspiracy has

been received, the declaration or act of a confederate against his co-conspirator, and relating to the unlawful agreement, is admissible (Section 718, subd. 6, B. & C. Comp.), although there is no enactment in this State defining a conspiracy or prescribing any punishment therefor, nor are there any indictable common-law offenses in Oregon. *State* v. *Vowels,* 4 Or. 324; *State* v. *Gaunt,* 13 Or. 115 (9 Pac. 55); *State* v. *Nease,* 46 Or. 433 (80 Pac. 897); *State* v. *Ayers,* 49 Or. 61 (88 Pac. 653: 10 L. R. A. (N. S.) 992: 124 Am. St. Rep. 1036.)

3. While it requires at least two persons to consummate an agreement to do an unlawful act, it is unnecessary to make both parties defendants in a criminal accusation, for one alone may be convicted upon proof that there was a conspiracy of which he was a member. 3 Rice, Evidence, § 576. In the case at bar the charge is preferred against Smith alone, and the only crime alleged to have been committed is arson; but at the trial it was competent to prove that Elliott, who was not jointly informed against, had conspired with the defendant to destroy Williamson's property, though the formal accusation does not charge conspiracy, or allege that the offense was committed by Smith and the self-confessed accomplice. *State* v. *Ruck,* 194 Mo. 416 (92 S. W. 706: 5 Am. & Eng. Ann. Cas. 976.) In a note to that decision it is said: "The rule stated in the reported case that evidence is admissible to prove a conspiracy to commit a crime with which a defendant is charged, although the conspiracy is not charged in the indictment, is in harmony with the current of authority"—citing many cases.

4. Considering all testimony relevant that tended to establish the confederacy of Smith and Elliott respecting the league in pursuance of which the building described in the accusation was destroyed, the rule relating to the admission of evidence of a conspiracy will be examined as to offenses perpetrated by the parties after the commis-

sion of the crime charged. It is generally conceded that where the proof tended to show that the accused party and his associate had conspired to do an unlawful act, evidence of other transactions in furtherance of the common enterprise is relevant. Elliott, Ev. § 2939. When, however, the unlawful agreement ends, evidence of other overt acts subsequently occurring, or of declarations thereafter made by either of the parties, is inadmissible, except where such act or declaration relates to a subsisting interest in property fradulently acquired pursuant to the conspiracy. *Pacific Live Stock Co.* v. *Gentry,* 38 Or. 275 (61 Pac. 422: 65 Pac. 597.) We think the exception thus noted is the only one that should be recognized as tending to show that the common enterprise had not terminated until the interest in such property had been adjusted; that in all other instances the admission of evidence of substantive offenses is the same in cases of conspiracy as in crimes committed by only one person, and in support of this deduction reference will be made to a few cases of the latter class.

Thus in *State* v. *Jeffries,* 117 N. C. 727 (23 S. E. 163), the defendant was charged with unlawfully disposing of an article of mortgaged personal property with intent to defeat the right of the mortgagee, and evidence tending to show that five months after the offense was committed the defendant offered to dispose of another article covered by the same mortgage, and it was held that such testimony was inadmissible to prove the intent with which the offense was committed. We are unable to discover any difference between five months, as stated in that case, and the several times when the subsequent offenses are asserted by Elliott to have been committed in the case at bar, except in respect of degree.

In the very exhaustive notes to the case of *People* v. *Molineux,* 62 L. R. A. 193, 335, in referring to acts of a defendant occurring after the commission of the crime

alleged in the accusation, it is said: "There are, however, as will be seen, decisions to the effect that evidence, not only of acts committed prior, but also of those committed subsequent, to the act charged, is admissible, although showing a distinct, independent crime. These ,are, however believed to be in the minority, and, besides, are lacking the strong reason which is given for the admission of evidence of the prior act. They are here given, and are followed by those holding exactly the contrary doctrine." Many decisions are there referred to which support the assertion so made, but they exclusively relate to sexual crimes, which is one of the exceptions to the general rule. That branch of the notes referred to closes with a statement as follows: "The minority in favor of the admission of subsequent acts is, however, a strong one; but it is thought that the reasoning in favor of their admission lacks a great deal of force of that generally used in the arguments in favor of the admission of evidence of prior acts."

5. In the case at bar the unlawful agreement, if it was in fact consummated, evidently related to the destruction of sufficient of Williamson's property to compel him to remove his sheep .from that part of Crook County which had been appropriated by Smith and Elliott as a pasture for their cattle. It does not appear from Elliott's testimony that the efforts put forth were adequate for that purpose, and such being the case, it might be said generally that the conspiracy did not terminate with the burning of the building specified in the accusation. When, however, the information selected the crime charged, the State thereby elected to confine the testimony to the issue joined by the defendant's plea of not guilty, thereby necessarily determining that the unlawful agreement was at an end, and excluding all evidence of subsequent offenses, except such as come within the exceptions specified in *State* v. *O'Donnell,* 36 Or. 222 (61 Pac. 892.)

Sig. 14

The motive which induced the burning of the building specified in the formal charge was the alleged enmity of the defendant and the accomplice against Williamson in consequence of the latter's appropriation of the grazing lands, but the intent with which such act was accomplished was immaterial, since the crime did not consist of degrees, and if the defendant set fire to the structure as alleged, an unlawful intent would be presumed from such unlawful act.    Section 788, subd. 2, B. & C. Comp.    In equivocal transactions, where the offense charged is susceptible of explanation, thereby refuting the implication of criminality, the question of intent becomes an important element, but in nearly all other instances the purpose involved is immaterial.    Thus if the defendant had admitted burning the building described in the accusation, but asserted that the conflagration was caused by accident, such as dropping an ignited match on combustible material in an attempt to light a pipe or a lantern, evidence of the subsequent destruction of the tent, etc., might have been admissible as tending to refute the claims of undesigned occurrence, and to show that the prior fire was applied to the structure with an unlawful intent to burn it.

6. The defendant having been charged with burning the building in which sheep were sheared and their wool sacked, was thereby advised of the crime for which he was expected to prepare for trial.    He was therefore not notified that proof of subsequent offenses would be offered tending to augment the probability of his guilt of the accusation laid; and, as the evidence tending to prove the commission of subsequent offenses cannot be placed on any of the well-recognized exceptions to the general rule, errors were committed in receiving such testimony.    The writer, though not fully concurring in all that has been said in this opinion, has attempted fairly to state the views of a majority of the court.

It follows from these considerations that the judgment is reversed, and a new trial ordered.          REVERSED.