Argued October 3, affirmed October 16, 1917.

## STATE *v.* AUSPLUND.*

(167 Pac. 1019.)

**Homicide—Questions for Jury.**

1. On a trial for manslaughter committed in producing an abortion, evidence *held* to make a question for the jury as to whether the death was caused by unlawful means and was attributable to defendant's action.

---

*On prosecution for homicide in commission, or attempt to commit an abortion, see notes in 63 L. R. A. 902; 49 L. R. A. (N. S.) 580.

On proof of *corpus delicti* in criminal case, see comprehensive note in 68 L. R. A. 33; particularly on proof of *corpus delicti* in homicide, see pages 75–79 of said note.    REPORTER.

Homicide—Questions for Jury—Excuse or Justification.

2. In view of Section 799, subdivision 28, L. O. L., providing that it is presumed that things have happened according to the ordinary course of nature and the ordinary habits of life, evidence on a trial for manslaughter committed in producing an abortion that deceased was in ordinary good health, in connection with the presumption that she would have survived the birth of the child, was sufficient to make a question for the jury as to whether the operation was necessary to preserve her life.

Criminal Law—Instructions—Singling Out Matters.

3. On such trial, an instruction that proof that a physician, in his professional treatment of a pregnant woman, had used means with intent to destroy the life of the child, and the death of the mother followed, was not evidence that the treatment was not necessary to preserve the mother's life was properly refused, as it would have been irregular to single out that particular branch of the evidence and tell the jury that it was not sufficient to establish guilt.

Criminal Law—Evidence—Statements of Accused—Weight.

4. While under the express provisions of Section 711, L. O. L., when part of an act, declaration, or conversation is given in evidence by one party the whole may be inquired into by the other, it is not the law where the state proves defendant's statement that the favorable parts must be given as much effect as the unfavorable parts, in view of Section 868, providing that the jury are the judges of the effect or value of the evidence when not declared conclusive.

Criminal Law—Instructions—Invasion of Province of Jury.

5. Under Section 868, L. O. L., making the jury the judges of the effect or value of evidence addressed to them when not declared conclusive, an instruction that all of defendant's statements proved by the witnesses for the state must be taken together, as well that part which made for defendant as that which made against him, and that if any part was in favor of defendant and not apparently improbable or untrue when considered with all the other evidence, then such part of defendant's statement in his favor was entitled to as much consideration from the jury as part of his testimony was properly refused, as it would practically have told the jury to give as much effect to defendant's favorable statements in his own interest as to the unfavorable parts, and would have invaded the province of the jury and violated Section 868.

Homicide—Manslaughter—Homicide in Commission of Another Offense—"Pregnant With Child."

6. Under Section 1900, L. O. L., providing that any person who shall administer any medicine, etc., to any woman pregnant with child, or employ any instrument, with intent to destroy such child, shall, in case of the death of the child or the mother, be guilty of manslaughter, a woman is "pregnant with child" from the moment of conception, and it is not necessary that the foetus be quick or able to move in the womb, as at common law.

Criminal Law—Province of Court and Jury—Assessment of Punishment.

7. The sole office of jurors is to ascertain the fact which is submitted for their inquiry and they have nothing whatever to do with the punishment to be inflicted upon defendant; it being the province

of the court to declare the extent of the punishment within the bounds of the statute.

**Pardon—Parole—Discretion of Court.**

8. Under Laws of 1911, page 152, providing that, when any person who has not previously been convicted of a felony shall be convicted of a felony or misdemeanor and sentence not to exceed ten years' imprisonment in the penitentiary shall have been pronounced, the court may in its discretion parole the defendant under certain conditions, the matter is left entirely to the discretion of the presiding judge, and there was no abuse of discretion in refusing to parole a defendant given an indeterminate sentence of from one to fifteen years for manslaughter committed in producing an abortion, though the jury included a recommendation of leniency in their verdict, and though nine of them made affidavit that they would not have agreed to the verdict if they had known the court would not parole defendant.

**Criminal Law—New Trial—Affidavits of Jurors.**

9. On a motion for a new trial in a prosecution for manslaughter committed in producing an abortion, affidavits of jurors could not be received to show that one of the jurors had told others that defendant had been guilty of performing criminal abortions on previous occasions.

> [As to effect on verdict of information as to facts given to jury by one of their number, see note in Ann. Cas. 1912B, 155.]

**Criminal Law—New Trial—Newly Discovered Evidence—Diligence.**

10. On a trial for manslaughter committed in producing an abortion, defendant claimed that he had merely commenced an examination of deceased's person when he discovered that she was dying. The state introduced considerable testimony about the condition of defendant's operating-room, tending to show that an operation had been performed. Defendant moved for a new trial on the ground that the condition of his operating-room was due to an operation performed on a third person, that she declined to testify on the trial, and that as a matter of professional ethics he had refrained from giving her name to his attorneys, but that since his conviction she had consented to testify. *Held,* that this was not ground for a new trial under Section 174, L. O. L., authorizing a new trial for newly discovered evidence which the moving party could not, with reasonable diligence, have discovered and produced at the trial as the evidence was not newly discovered, having been within defendant's knowledge at all times, and she should have been subpoenaed and offered as a witness when, if she had refused to do so, it could have been determined whether she had such privilege.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

The defendant was convicted of the crime of manslaughter alleged to have been committed by producing an abortion and sentenced to imprisonment in the penitentiary. He appealed from the judgment.

                                        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Logan & Smith* and *Mr. John J. Fitzgerald*, with an oral argument by *Mr. John F. Logan*.

For the State there was a brief and an oral argument by *Mr. Charles C. Hindman*.

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The first assignment of error is that there was no proof of the *corpus delicti* sufficient to carry the case to the jury. Substantially the testimony was that Anna Anderson, an unmarried woman about twenty-five years of age who up to that time was in good health, went to the office of the defendant, a practicing physician, on October 15, 1915. Previously she had applied to another physician who examined her and discovered that she was about three months advanced in pregnancy. She asked him to remove the foetus, which he declined to do. According to the statement of the defendant made to the officers, the decedent told him when she came to his office that there was something wrong with her and she wished him to examine her; that he laid her upon a lounge and proceeded to make digital examination; that when he inserted his fingers in the vulva she suddenly began to gasp and he saw that she was dying; that he then went out for some stimulant and while on that errand called to his assistance a lady physician whose office was in the same building; that on their return to his office they determined to call a third physician, but the girl died despite their efforts to revive her. The coroner and other persons testified that they found the decedent with her skirts removed and the lower part of her body unclothed except for her drawers

and combination suit, and that they discovered a bloody sheet in the defendant's office and one of his white coats upon which there were a number of blood stains. Several surgical instruments adapted for curetting the uterus were seen in his office and upon one of them was a piece of tissue which some expert witnesses said was a portion of the placental membrane. These instruments had the appearance of having been recently used. The floor in his operating-room was wet and there was a Kelly pad which was wet as though it had been lately employed in operations involving female diseases. The autopsy showed that the uterus had a number of traumatisms on its interior surface and that it was expanded to about the stage proper for three months' pregnancy. The undertaker who embalmed the body testified in substance that in the process of withdrawing the blood from it he could get only a comparatively small quantity. There was testimony that the lesions of the uterus were made within not to exceed five to eight hours prior to the death of the girl. In our judgment all these circumstances taken together are sufficient to authorize the jury to determine whether or not the death of the young woman was caused by unlawful means and to attribute the same to the action of the defendant. These conditions take the question of proof of the *corpus delicti* from the court and pass it to the jury.

The defendant next contends that the Circuit Court erred in refusing to give to the jury the following instruction:

"In prosecutions under the law of the State of Oregon and under which the indictment in this case is drawn, it is required of the state that it allege and prove among other things that the employment of the

means set out in the indictment which were used to destroy the foetus were not necessary to preserve the life of the woman. Proof that a physician, in his professional treatment of a woman pregnant with a child, had used means with intent thereby to destroy the child and the death of this mother followed is not evidence that the treatment was not necessary to preserve the life of the mother. The defendant has the right to stand upon his plea of 'not guilty' and that the prosecution is required to prove every charge in the indictment constituting the offense, including allegations of negative matter before a conviction can be had in the case.''

2, 3. In support of this attack upon the conviction the defendant cites *State* v. *Clements,* 15 Or. 237, 248 (14 Pac. 410), where Mr. Justice THAYER used this language practically identical with some embodied in the instruction which was refused:

''Proof that a physician, in his professional treatment of a woman pregnant with a child, had used means, with the intent thereby to destroy the child, and the death of the child was thereby produced, is not evidence that the treatment was not necessary to preserve the life of the mother; nor, if it produced the death of the mother, that it was not an honest effort on the part of the physician to preserve her life.''

If taken alone, this language would go far to sustain the defendant in his present contention, but this was not all that was said in that opinion on that subject. It continues:

''The experience of mankind shows that cases have often arisen in which such treatment has necessarily been resorted to, and, in the absence of other proof, the law, in its benignity, would presume that it was performed in good faith, and for a legitimate purpose. The extent of proof, to establish the negative averment in such a case, would necessarily be limited by the circumstances. It could not, in the nature of

things, be made positive, except as aided by the fact that the accused was able to refute it absolutely, if untrue, and had failed to attempt to do so.''

The language of the decision should be read in connection with the case then under consideration. In that instance there was little, if anything, proved beyond the bare fact that the defendant, a physician,. had employed upon the decedent means intended to destroy the child by reason of which the mother died. In the instant case there is other proof which the jury is entitled to consider taking it out of ''the absence of other proof'' mentioned by Mr. Justice THAYER. For instance it was in evidence that the deceased woman was in ordinary good health. It is presumed ''that things have happened according to the ordinary course of nature and the ordinary habits of life'': Section 799, subdivision 28, L. O. L. Pregnancy and childbearing are not abnormal, but natural with womankind. The presumption that a pregnant woman would give birth to a child naturally and survive afterwards was sufficient to take the question to the jury on this point and would be proper for them to consider as proof of the negative that it was not necessary to perform the operation in order to preserve the life of the mother. It was of course requisite to prove that the defendant used means with intent to destroy the child, but it would be irregular to single out that particular branch of the evidence and tell the jury that it was not sufficient to establish the guilt of the defendant. It would be taking up the testimony by piecemeal and would mislead the jury if they were informed in detail that each particular part standing alone would be insufficient to justify conviction. As said by Mr. Justice HARRIS in *Saratoga Inv. Co.* v. *Kern,* 76 Or. 243, 249 (148 Pac. 1125):

"It was error to advise the jury of the effect of particular acts which, because of the nature of the controversy, constituted the cynosural facts, when there was evidence in the case which could rightfully be considered in the same relation": *Stanley* v. *Smith,* 15 Or. 505 (16 Pac. 174); *Patterson* v. *Hayden,* 17 Or. 238 (21 Pac. 129, 11 Am. St. Rep. 822, 3 L. R. A. 529); *Crossen* v. *Oliver,* 41 Or. 505 (69 Pac. 308); *Kellogg* v. *Ford,* 70 Or. 213 (139 Pac. 751).

4, 5. Again it is urged that the court did wrong to the defendant by not giving this charge to the jury:

"The state has produced several witnesses who have attempted to narrate certain statements made to them or in their presence by the defendant. All of such statements so given by the state's witnesses must be taken together, as well that part which makes for the defendant as that which makes against him, and if any part of such testimony is in favor of the defendant, and it is not apparently improbable or untrue when considered with all the other evidence in the case then such part of defendant's statement in his favor is entitled to as much consideration from you as a part of his testimony."

This instruction apparently is supported by some decisions in Illinois and Texas: *Jones* v. *State,* 29 Tex. App. 20 (13 S. W. 990, 25 Am. St. Rep. 715); *Burnett* v. *People,* 204 Ill. 208 (68 N. E. 505, 98 Am. St. Rep. 206, 66 L. R. A. 304). These cases, contrary to sound reasoning as we view it, inculcate the doctrine that if the state puts in evidence an admission by the defendant it must not only put in all the statement, but further is bound to accept as true the whole of the statement as well that which is against the defendant as that which is in his favor. Another case cited by the plaintiff is *Pratt* v. *State,* 53 Tex. Cr. 281 (109 S. W. 138), which goes no further than to establish the general rule that when part of the statement is

introduced by one party the other is entitled to the remainder, but no intimation is given about the weight to be attributed to the portion favorable to the defendant. The rule on this subject is aptly stated in *State v. Novak*, 109 Iowa, 717, 733 (79 N. W. 465):

"The court gave the following instruction: 'Where the verbal admission of a person charged with a crime is offered in evidence, the whole of the admission must be taken together, as well as that part which makes for the accused as that which may make against him, and if the part of the statement in favor of the defendant is not disproved, and is not apparently improbable or untrue, when considered with all the other evidence in the case, then such part of the statement is entitled to as much consideration from the jury as any other part of the statement; but the jury is not obliged to believe or disbelieve all of such statement. They may disregard such parts of it, if any, as are inconsistent with the other testimony, or which the jury believe from the facts and circumstances proved on the trial are untrue.' The defendant asked the court to instruct that the state was bound by the statement of defendant as proved, the effect of which was to declare him not guilty. We think the instruction as given expresses the law. The idea that when a party puts in evidence the statements of the opposite party to obtain certain admissions he is bound to accept as true all that may be contained in the statements is new, and, we may add, somewhat novel. We understand the rule to be that when the state puts such a statement in evidence it is the province of the jury to consider what is proven to be true, like any other evidence, whether it be the whole or a part. The jury may believe that which is against the defendant, and reject that which is in his favor, if they see sufficient grounds in the evidence to warrant it, or any inherent improbability in the statement itself. The jury is at liberty to judge it, like other evidence, by all the circumstances of the case."

86 Or.—9

To the same effect are *State* v. *Coats,* 174 Mo. 396 (74 S. W. 864); *State* v. *Wilson,* 223 Mo. 173 (122 S. W. 671).

It is true, indeed, that Section 711, L. O. L., says:

"When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole, on the same subject, may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

Nothing is said in this Oregon rule of evidence about the weight to be given to the matters therein mentioned. On the contrary, Section 868, L. O. L., declares that "The jury, subject to the control of the court, in the cases specified in this code, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive." By the suggested direction to the jury now under consideration, the court practically was asked to say to them that they must give as much effect to the favorable statements made by the defendant in his own interest as to the unfavorable parts. To have used such language would have been to invade the province of the jury and to violate the rule enunciated in Section 868, *supra.*

6. The defendant objected when the court gave to the jury this instruction:

"The statute uses the term 'pregnant with child' and a woman is pregnant with child from the time of conception to the time of natural delivery. It is not essential in this state to the proof of pregnancy with child, that the child should be quick; that is to say, that it should be able to move in its mother's womb; but pregnant means in this state and under our stat-

ute as so defined, from the time of conception and continues until the time of maternal delivery.''

The statute under which this prosecution was brought reads as follows:

''If any person shall administer to any woman pregnant with a child any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case the death of such child or mother be thereby produced, be deemed guilty of manslaughter'': Section 1900, L. O. L.

The argument of the defendant is that at common law the procuring of a miscarriage before quickening of the foetus is not punishable, citing 1 Russell on Crimes, p. 172; *Mitchell* v. *Commonwealth,* 78 Ky. 204 (39 Am. Rep. 227); *Smith* v. *State,* 33 Me. 48 (54 Am. Dec. 607); *State* v. *Cooper,* 22 N. J. Law, 52 (51 Am. Dec. 248); *Commonwealth* v. *Parker,* 9 Met. (Mass.) 263 (43 Am. Dec. 396). He invokes that rule in the present juncture. We are not required nor permitted to judge the issue in controversy by common-law standards, for there are no common-law crimes in this state: *State* v. *Vowels,* 4 Or. 324; *State* v. *Gaunt,* 13 Or. 115 (9 Pac. 55); *State* v. *Nease,* 46 Or. 433 (80 Pac. 897); *State* v. *Ayers,* 49 Or. 61 (88 Pac. 653, 124 Am. St. Rep. 1036, 10 L. R. A. (N. S.) 992); *State* v. *Stephanus,* 53 Or. 135 (99 Pac. 428, 17 Ann. Cas. 1146); *State* v. *Smith,* 55 Or. 408 (106 Pac. 797); *State* v. *Smith,* 56 Or. 21 (107 Pac. 980).

The statute refers to ''any woman pregnant with a child'' without reference to the stage of pregnancy. When a virile spermatozoon unites with a fertile ovum in the uterus, conception is accomplished. Pregnancy

at once ensues and under normal circumstances con-
tinues until parturition. During all this time the
woman is "pregnant with a child" within the meaning
of the statute. She cannot be pregnant, with any-
thing else than a child. From the moment of concep-
tion, a new life has begun and is protected by the
enactment. The product of conception during its en-
tire course is imbued with life and is capable of being
destroyed as contemplated by the law. By such de-
struction the death of a child is produced and often
that of its mother as well. The legislature did not
waste time with refinements about quickening, but
applied the law to all stages of pregnancy and we
would usurp its prerogative if we read into the stat-
ute something not found there.

This subject was exhaustively considered by Mr.
Justice EAKIN in *State* v. *Atwood,* 54 Or. 526 (102 Pac.
295, 104 Pac. 195, 21 Ann. Cas. 516). The learned
justice refrained from literally deciding that it was
not necessary to show that the mother was quick with
child to sustain a prosecution under Section 1900,
L. O. L., because it was not essential to the decision
of that case; but his reasoning clearly leads to that
conclusion. Although there was a vigorous dissent
by Mr. Justice KING, with whom concurred Mr. Jus-
tice SLATER, they did not dispute the reasoning of the
principal opinion on that point. The indictment there
was for maintaining a nuisance in the shape of a
maternity hospital operated with the intent and pur-
pose of unlawfully committing, producing and procur-
ing abortions therein upon pregnant women. The
prosecution was conducted under Section 2087,
L. O. L., directed against the commission of acts which
grossly disturb the public peace or health, or openly
outrage public decency, and are injurious to public

morals, for which no punishment is expressly pre-
scribed. The argument of the dissenting opinion was
that if abortions were committed in the place in ques-
tion there was a penalty for manslaughter as defined
by Section 1900, L. O. L. The argument of Mr. Jus-
tice EAKIN showing that it is not material to show
that the foetus had quickened in order to sustain a
prosecution under Section 1900, is convincing on that
point. In *State* v. *Loomis* (N. J.), 97 Atl. 896, the
distinction between the statutory offense and that at
common law is pointed out, and the case of *State* v.
*Cooper,* 22 N. J. Law, 52 (51 Am. Dec. 248), relied
upon here by the defendant, is distinguished. The
Loomis case was based upon statute. The court there
said:

"At common law, as was pointed out in *State* v.
*Cooper, supra,* the offense was only against the life
of the child. The enactment of the statute immedi-
ately afterward was largely to protect the health and
life of the mother against the consequences of the
act. And for this reason it was held by this court in
*State* v. *Murphy,* 27 N. J. L. 112, that it was imma-
terial, in determining the guilt of the offender against
the statute, whether the foetus had quickened or not;
that in either event the degree of the defendant's guilt
was the same."

See, also, *Powe* v. *State,* 48 N. J. Law, 34 (2 Atl.
662); *State* v. *Alcorn,* 7 Idaho, 599 (64 Pac. 1014, 97
Am. St. Rep. 252); *State* v. *Stafford,* 145 Iowa, 285
(123 N. W. 167); *State* v. *Fitzgerald,* 49 Iowa, 260 (31
Am. Rep. 148); *Commonwealth* v. *Wood,* 11 Gray
(Mass.), 85; *Wilson* v. *State,* 2 Ohio St. 319; *State* v.
*Dickinson,* 41 Wis. 299. We deduce the conclusion
that under our statute it is not necessary to allege or
prove quickening of the foetus in prosecutions for the
crime defined in Section 1900, L. O. L., and that there
was no error in the charge of the court on this point.

7, 8. It is next urged that it was an abuse of discretion for the court to deny the defendant's motion for a parole supported as it was by the recommendation of the jury for leniency included in their verdict and by the affidavits of nine of the jurors that they were induced to sign it upon the representation that by so finding, the defendant would be paroled, and that had they known the court would not so parole him they would not have agreed to the verdict. The sole office of jurors is to ascertain the fact which is submitted for their inquiry. They have nothing whatever to do with the punishment to be inflicted upon the defendant in the event of an adverse verdict. Within the bounds of the statute it is the province of the court alone to declare the extent of punishment. Under the act of February 18, 1911, Chapter 108, Laws 1911, p. 152, it is laid down that when any person who has not previously been convicted of a felony shall have been convicted of any felony or misdemeanor and sentence not to exceed ten years' imprisonment in the penitentiary shall have been pronounced, the court may in its discretion, by order of record, parole the defendant under certain conditions. In this instance the court imposed upon the defendant the indeterminate sentence of from one to fifteen years: Section 7, Chapter 127, Laws 1911, amending Section 1592, L. O. L. There is nothing in the record showing that the defendant had not previously been convicted of a felony so as to bring him within the purview of the parole statute referred to. Moreover, that enactment leaves the matter entirely to the discretion of the presiding judge. We cannot discern from any data before us that he abused his discretion and, hence, no further notice need be taken of this objection.

9. Some time after the conclusion of the trial, three jurors made affidavits that while deliberating on the verdict one of their number stated to his fellows that during a recess of the court while the trial was in progress one of his neighbors had told him that the defendant had been guilty of performing criminal abortions on previous occasions. These affidavits were offered and urged in support of the defendant's motion for a new trial because of the misconduct of the jurors. The court denied the motion for the reason stated in the judgment that the affidavits of jurors could not be received or considered to impeach their verdict. This was qualified by the further statement: "This finding is not to be considered as indicating that but for this ruling this court would have granted a new trial because of any alleged misconduct of the jury." This question has been often considered by this court in various phases, but uniformly against the contention that jurors may file affidavits to impeach their verdict. The latest case on the subject is *Hinkel* v. *Oregon Chair Co.,* 80 Or. 404 (156 Pac. 438, 157 Pac. 789), following *State* v. *Smith,* 43 Or. 109 (71 Pac. 973). The doctrine of these precedents is that the affidavits are not competent for that purpose. In other words, although the jury may have been guilty of misconduct, in fact, their own affidavits are not legal evidence of it.

Much reliance is placed upon *Mattox* v. *United States,* 146 U. S. 140 (36 L. Ed. 917, 13 Sup. Ct. Rep. 50), where the court permitted the consideration of affidavits showing that during their deliberations the jurors were permitted to read a newspaper article strongly denunciatory of the defendant and containing an argument for his conviction. The better rule, however, is stated by the same court in *McDonald* v.

*Pless,* 238 U. S. 264, 267 (59 L. Ed. 1300, 35 Sup. Ct. Rep. 783).

"When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury-room. These two conflicting considerations are illustrated in the present case. If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by witnesses who were competent to testify in a proceeding to set aside the verdict. But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference. The rule on the subject has varied. Prior to 1785 a juror's testimony in such cases was sometimes received though always with great caution. In that year Lord Mansfield, in *Vaise v. Delaval,* 1 T. R. 11, refused to receive the affidavit of jurors to prove that their verdict had been made by lot. That ruling soon came to be almost universally followed in England and in this country. Subsequently, by statute in some states, and by decisions in a few others, the juror's affidavit as to an overt act of misconduct, which was capable of being controverted by other jurors, was made admissible.

And, of course, the argument in favor of receiving such evidence is not only very strong but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe': *Cluggage* v. *Swan,* 4 Binn. 155 (5 Am. Dec. 400); *Straker* v. *Graham,* 4 M. & W. 721.''

The court reviews the case of *Mattox* v. *United States,* 146 U. S. 140 (36 L. Ed. 917, 13 Sup. Ct. Rep. 50), and, while it does not directly overrule it, goes on to say:

''There is nothing in the nature of the present case warranting a departure from what is unquestionably the general rule, that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict. * * The suggestion that, if this be the true rule, then jurors could not be witnesses in criminal cases, or in contempt proceedings brought to punish the wrongdoers is without foundation. For the principle is limited to those instances in which a private party seeks to use a juror as a witness to impeach the verdict.''

To overturn the verdict in the present case because of the affidavits of the jurors would be to reverse what has been the uniform rule in this state. The great evil of continued litigation and strife, even after verdict, is of more importance to be avoided than the sporadic instances of possible misconduct by jurors. At the outset they are sworn to try a case according to the law and the evidence as given to them upon the

trial, thus excluding all other considerations. The sanction of this oath binds them until the rendition of their verdict, and it is not good policy to allow them to stultify themselves by stating to the court that they have violated their official oath and taken into consideration matters not pertaining to the case and outside the record. Jurors should be made to understand the limits of their duty which is simply to ascertain the fact involved in the case. A few well directed prosecutions for contempt of court by jurors in assuming to acquire information from sources outside of the evidence would do much for the proper administration of justice.

10. Another reason for a new trial urged by the defendant was that of newly discovered evidence. It will be remembered that there was considerable testimony about the condition of the defendant's operating-room. The affidavit in this branch of the case was that earlier in the day on which the death of Anna Anderson occurred, another young woman was in the defendant's office and took treatment from him for some uterine disorder which involved the use of a considerable amount of medicated fluids and water and employment of some instruments in the vaginal cavity. In support of his motion the defendant makes the statement on oath that before the trial he besought this young woman to appear as a witness on his behalf so as to account for the appearance of his office at the time, but that she refused to waive her right, if any she had, to decline to testify, and that as a matter of professional ethics he had refrained from giving her name to his attorneys, but that since his conviction she has consented to appear and testify in his behalf giving up all privileges which she might have to withhold her statement. It is laid down in

Section 174, L. O. L., that a new trial may be granted for "newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial." In our judgment the evidence given by the young woman was not newly discovered. What she knew was within the knowledge of the defendant at all times. She resided in the city of Portland and was there during the whole period. She was subject to the subpoena of the court and could have been offered as a witness. Whether she had the privilege of refusing to testify we do not undertake to determine. We do say, however, that whether a new trial should be granted cannot be made to depend upon the capricious prudery of any sentimental girl. The least that can be said is that if the defendant desired her testimony he should have gone as far as to subpoena her and offer her as a witness when, if she had claimed the privilege of silence, it would have been time enough to decide that matter. He cannot experiment with the uncertainties of a jury trial and afterwards renew his attack with matters already within his knowledge. From these considerations the judgment is affirmed.

Affirmed.

Mr. Chief Justice McBride, Mr. Justice Benson and Mr. Justice Harris concur.