Argued January 4, affirmed February 1, 1927.

# STATE *v.* R. F. ROBINSON.

## (252 Pac. 951.)

**Criminal Law—Checks Drawn Subsequent to False Check Charged in Indictment Held Admissible to Show Parties' Intent and as Res Gestae.**

1. In prosecution for uttering check without sufficient funds, checks drawn subsequent to date of check described in indictment *held* admissible, being competent to prove intent of parties engaged in fraudulent manipulation of checks; every transaction in their system being part of the *res gestae*.

**Criminal Law—Criminal Liability Held Established on Proof That Defendant Uttered Checks, and That Actual Uttering, Through Confederate, had Occurred in County Where Indicted.**

2. In prosecution for uttering check without sufficient funds, criminal liability of defendant could be fixed by proving that checks were uttered in county where indicted, though actual uttering was performed by confederate; defendant never having been in county where checks were actually uttered.

**Conspiracy—Conspiracy may be Proven and Jury Instructed on It Without Charging All Conspirators Involved.**

3. One conspirator may be indicted and tried without joining the others, in which case conspiracy may be proven and jury instructed on it.

**Criminal Law—Circuit Court of County Where Checks not Supported by Sufficient Funds were Uttered by Defendant Through Confederate of Defendant, Held to have Jurisdiction Over Defendant's Prosecution.**

4. Where defendant to prosecution for uttering checks, without sufficient funds, uttered checks in one county by delivering them to confederate, who actually uttered them in another county, where defendant had never been, Circuit Court of county where checks were actually uttered *held* to have jurisdiction over prosecution.

**False Pretenses—In Prosecution for Uttering Check Without Sufficient Funds, Falsity Thereof Held Competent to Show Maker's Intent to Defraud (Or. L., § 7853).**

5. In prosecution for uttering check without sufficient funds, falsity of check, *held* competent to show intent of drawer to defraud, in view of Section 7853, Or. L., setting out admissions by drawer of negotiable instrument.

---

2. See 11 R. C. L. 855.
3. See 5 R. C. L. 1078.

False Pretenses—In Prosecution for Uttering Check, Falsity Thereof Held Competent to Establish Fraudulent Intent of Defendant's Confederate Negotiating Check (Or. L., § 7857).

6. In prosecution for uttering check without sufficient funds, falsity of check *held* competent to establish fraudulent intent of defendant's confederate negotiating check, in view of Section 7857, Or. L., setting out warranties of person negotiating negotiable instrument.

Criminal Law—In Prosecution for Uttering Check Without Sufficient Funds, Instructions as to Presumption of Intent to Defraud, Stating Proposition of Law, Held not Erroneous (Or. L., §§ 797, 1964—2).

7. In prosecution for uttering check without sufficient funds, instruction as to presumption of intent to defraud *held* not erroneous, in that it stated a proposition of law under Sections 797, 1964—2, Or. L.

---

Banks and Banking, 7 C. J., p. 675, n. 7.
Bills and Notes, 8 C. J., p. 394, n. 20, p. 395, n. 27, p. 396, n. 35, p. 397, n. 53.
Conspiracy, 12 C. J., p. 577, n. 18, p. 613, n. 55, 57, p. 640, n. 96, 1.
Criminal Law, 16 C. J., p. 195, n. 51, p. 588, n. 8, 9, p. 589, n. 18, p. 591, n. 34, p. 972, n. 75.
Indictment and Information, 31 C. J., p. 764, n. 34, p. 765, n. 35, p. 838, n. 27, p. 847, n. 90.

From Washington: GEORGE R. BAGLEY, Judge.

Department 1.

'AFFIRMED.

For appellant there was a brief over the names of *Messrs. Collier, Collier & Bernard* and *Mr. Wm. G. Smith,* with an oral argument by *Mr. E. F. Bernard.*

For respondent there was a brief over the name of *Mr. William V. Cowan,* with an oral argument by *Mr. E. B. Tongue,* District Attorney.

BURNETT, C. J.—The grand jury of Washington County returned an indictment against the defendant, the charging part of which is as follows:

"That the said defendant R. F. Robinson on the 31st day of October, A. D. 1922, in the said County of

Washington, State of Oregon, then and there being did then and there wilfully and unlawfully, with intent to defraud, make and draw, and utter and deliver, to the 'Bank of Sherwood,' a banking corporation organized, existing and doing business under and by virtue of and pursuant to the laws of the State of Oregon, a check, or order, for the payment of money, upon the State Bank of Rainier, a bank then and there incorporated and doing business under, by virtue of and pursuant to the laws of the State of Oregon, and which check and order for the payment of money was and is in words and figures as follows, to-wit:

"Rainier, Oregon, Oct. 26, 1922, No. **1385.**
"STATE BANK OF RAINIER.
"96–215.
"Pay to J. Gravelle..........or order $560.00
Five Hundred sixty no/100..........Dollars.
"ROBINSON BROS. REALTY Co.
"By R. F. ROBINSON.

"The said defendant R. F. Robinson knowing at the time of such making, drawing, uttering and delivering, that the maker, or drawer thereof, had not sufficient funds in, or credit with, said State Bank of Rainier, for the payment of such check, or order, in full, upon its presentation, * * ."

At a trial on a plea of not guilty, the evidence disclosed substantially the following facts: At the request of a Mrs. Adams and within a space of about a week, the defendant, while in Portland, Multnomah County, drew sundry checks on the Bank of Rainier for various amounts in favor of persons whose names were given him by Mrs. Adams. Whether the names were fictitious or genuine does not clearly appear but it is certain that the drawees did not handle any of the checks. On the contrary, they were delivered in each instance to Mrs. Adams. The defendant had insufficient funds in the Rainier bank to meet the

checks, but he expected Mrs. Adams to deposit her own checks to cover them. With the exception of the first two and another not important here, she took each of the checks to Sherwood; deposited them there in the bank to her credit and from time to time took cashier's checks from the Bank of Sherwood, giving therefor her own check on the account thus opened by the deposit of Robinson's checks. The Robinson checks were presented to the Rainier Bank and payment refused for want of funds and notification sent to the defendant. The check mentioned in the indictment was but one of the several thus drawn.

1. It is contended that the court erred in admitting any of the checks which were drawn after the date of the check described in the indictment. The case of *State* v. *O'Donnell*, 36 Or. 222 (61 Pac. 892), is a leading case on the subject of proving other acts which are in themselves criminal for the purpose of establishing the criminality of the act charged in the indictment. The subject is also treated to some extent in *State* v. *Willson*, 113 Or. 450 (230 Pac. 810, 233 Pac. 259, 39 A. L. R. 84). It must be borne in mind that the end to be attained is to prove the act charged in the indictment and that any evidence which tends in that direction is admissible, notwithstanding it may also incidentally disclose some other crime. It would be intolerable if a man who actually drilled into the safe of a bank, blew it open and thence took the bank's money could not be convicted if the testimony revealed that he broke into a blacksmith-shop and stole a sledge and a drill and into a gunstore and carried away enough powder to blow open the safe, merely because the evidence also disclosed burglary of the blacksmith-shop and of the gunstore. This

case comes within an exception noted by Mr. Justice Moore in State v. O'Donnell, supra, at page 224, that:

"If several similar criminal acts are so connected by the prisoner, with respect to time and locality, that they form an inseparable transaction, and a complete account of the offense charged in the indictment cannot be given without detailing the particulars of such other acts, evidence of any or all of the component parts thereof is admissible to prove the whole general plan."

A reasonable view of the evidence indicates that the defendant acting in conjunction with Mrs. Adams was engaged in a system of transactions whereby the defendant would draw the checks which Adams would take and utter to the Bank of Sherwood with the result already mentioned. It was a concerted plan to loot the Bank of Sherwood. It is said that the defendant did, "with intent to defraud, make and draw, and utter and deliver to the 'Bank of Sherwood' " a check. Under the doctrine of State v. Carr, 6 Or. 133, the indictment states conjunctively acts which are enumerated in the statute disjunctively. It is said in the syllabus in that case that:

"When the statute makes the commission of different acts a crime, and such acts are stated disjunctively in the statute, the indictment may, as a general rule, embrace the whole in a single count, but it must use the conjunctive 'and' when 'or' occurs, else it will be defective for uncertainty. * *

"Dealing and playing and carrying on a 'game of faro' at one sitting, and between the same parties, constitute but one offense, and an indictment therefore is supported when the commission of one of such acts, conjunctively stated, is proven."

2. In this instance it is contended that the defendant was never in Washington County and that all he

did occurred in Multnomah County where he actually wrote the checks and that consequently the Circuit Court of Washington County had no jurisdiction over him. But, under the doctrine of the Carr case, it was competent to prove that he uttered the checks, which proof being established and the uttering having occurred in Washington County, the defendant would be criminally liable under this indictment. He might accomplish the uttering either in person by going to the Bank of Sherwood and there negotiating the check or he might do it by a confederate who went to Sherwood and performed the act of uttering it. It became competent to prove the intent with which these acts were done; hence, the propriety of introducing all the checks drawn under similar circumstances and used by the two parties to the transaction. It was competent as indicative of the intent of Mrs. Adams to show that she was not an innocent party imposed upon by a single check but that the number of checks delivered to her under the same circumstances and at her request disclosed her intention and showed her to be a confederate of the defendant. Under the circumstances detailed in the testimony, a single check would be a weak presentation of the actual state of the case. The whole transaction is entitled to consideration and the system employed should reach the attention of the jury to enable them to determine the intent with which the particular act in the indictment was performed. In a series of such acts each illustrates the attitude of mind as to the others. The intent is quite as well illustrated in such circumstances by the last check as well as by the first and any one of those checks might be named in the indictment as the one in the present instance. Every transaction in

120 Or.—33

the system properly is part of the *res gestae*. Subsequent acts of the same kind as part of a system were shown in *State v. Garrett*, 71 Or. 298 (141 Pac. 1123), and *State v. Gauthier*, 113 Or. 297 (231 Pac. 141).

3, 4. One conspirator may be indicted and tried without joining the others, in which case the conspiracy may be proven and the jury instructed about it: *State v. Smith*, 55 Or. 408 (106 Pac. 797). Hence, the court was not in error in its instructions about conspiracy. The evidence clearly indicates that Mrs. Adams and the defendant were acting together in negotiating these spurious checks with the intent to defraud the Bank of Sherwood. This being true, the act of either, committed in Washington County, in pursuance of the iniquitous scheme was the act of the other and is binding on both of them including the present defendant. Although he drew the check in Multnomah County, yet the act of his confederate in pursuit of the intent to defraud the bank was his act and, being committed in Washington County, it binds him and gives the Circuit Court of that county jurisdiction to try him.

5. As to the falsity of the check with the deduction therefrom of the intent to defraud, Section 7853, Or. L., is instructive.

"The drawer, by drawing the instrument, admits the existence of the payee and his then capacity to indorse, and engages that on due presentment the instrument will be accepted or paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it; but the drawer may insert in the instrument an express stipulation negativing or limiting his own liability to the holder."

6. This covers the mental attitude or intent of the present defendant as the admitted signer of the various checks.   As to the person who took the check, negotiated it or uttered it to the Bank of Sherwood, Section 7857, Or. L., may be read with profit, thus:

"Every person negotiating an instrument by delivery or by a qualified indorsement, warrants (1) that the instrument is genuine and in all respects what it purports to be; (2) that he has a good title to it; (3) that all prior parties had capacity to contract; (4) that he has no knowledge of any fact which would impair the validity of the instrument or render it valueless; but when the negotiation is by delivery only the warranty extends in favor of no holder other than the immediate transferee. * * "

The checks so drawn, delivered and indorsed to Mrs. Adams and by her uttered to the Bank of Sherwood as disclosed by the testimony were competent as showing the system employed by the parties handling such checks and illustrative of their acts and intentions.   Measured by the standards set up in Sections 7853 and 7857, Or. L., *supra*, the checks were false in that the defendant knew they would not be paid for want of funds.   His confederate also knew that they were in that respect not genuine.   These instruments were, therefore, badges of fraud portraying the evil intent of both the defendant and Mrs. Adams, by whose act of uttering the check in Washington County, while operating the system devised by her and the defendant, the latter became liable as charged in the indictment as one who uttered the check.

7. Complaint is made also of the following instruction:

" * * if you find from the evidence defendant made, drew, uttered or delivered the check described

in the indictment and payment thereof was refused by the State Bank of Rainier upon presentment to it for payment, and the defendant failed within two days after receiving notice of such refusal of said bank to pay the same to pay said bank the amount of such check, such failure on the part of the defendant, if he did fail, is *prima facie* evidence of intent to defraud and of knowledge of insufficient funds in or credit with the bank upon which the check was drawn, and, *prima facie*, raises such a degree of probability of intent to defraud and knowledge of insufficient funds that it should be credited by you as jurors unless it is rebutted or the contrary is established."

Section 1964—2, Or. L., provides as follows:

"As against the maker or drawer thereof, the making, drawing, uttering, or delivering of a check, draft or order, payment of which is refused by the drawee, shall be *prima facie* evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank or other depositary, provided such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with all costs and protest fees, within two days after receiving notice that such check, draft or order has not been paid by the drawee."

It is urged that this instruction invaded the province of the jury. We read, however, in Section 797, Or. L., that:

"A presumption unless declared by law to be conclusive, may be overcome by other evidence direct or indirect, but unless so overcome, the jury are bound to find according to the presumption."

Virtually, Section 1964—2, *supra*, establishes and defines what is tantamount to a presumption. The instruction of the court was grounded upon Section 797 to the effect that unless it is overcome, the jury is bound to find according to the presumption. It is a

proposition of law and not of fact that the court announced to the jury and is fully justified by the section just quoted. This statutory precept distinguishes the present case from *Gallup* v. *Rozier,* 172 N. C. 283 (90 S. E. 209).

There is no material error in the record. It follows that the judgment of the Circuit Court is affirmed.

AFFIRMED.

RAND, COSHOW and BELT, JJ., concur.